732 A.2d 356

**Steve NAM, et al.**

v.

**MONTGOMERY COUNTY, MARYLAND, et al.**

**No. 1089, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

July 1, 1999.

Keith W. Donahoe (John P. Zanelotti and Koonz, McKenny, Johnson, DePaolis & Lighfoot, on the brief), Greenbelt, for appellants.

Charles L. Frederick, Associate County Attorney(Charles W. Thompson, Jr., County Attorney, Joann Robertson, Chief, Litigation Division and Karen L. Federman Henry, Principal Counsel for Appeals, on the brief), Rockville, for appellees.

Argued before SALMON, BYRNES and MARVIN H. SMITH (Retired, Specially Assigned), JJ.

SMITH, Judge.

We shall here affirm the judgment of the Circuit Court for Montgomery County, which dismissed with prejudice consolidated suits brought by appellant Steve Nam, individually and as personal representative of the estate of his deceased daugh-

ter, Elizabeth Nam, and appellant Sunny Nam, his wife, (the Nams) against a number of health care providers.

There were two suits growing out of the same incident. In the first suit the Nams sued Montgomery County, Maryland; Montgomery General Hospital, Inc.; Emergency Medicine Associates, P.A.; and "John Doe, M.D." The claims against Montgomery General Hospital and Emergency Medicine Associates, P.A., were dismissed with prejudice by the parties on February 9, 1996. The second suit was against Montgomery County (the County) and Lizzie James, "formerly known as John Doe, M.D." The cases were consolidated.

The case against Ms. James went out on a limitations issue. The Nams would have us hold that a "John Doe" filing relates back so as to have the suit timely filed. We do not see it that way. They also would have us hold that under the Local Government Tort Claims Act Montgomery County is properly before the court as a party. We do not agree on that point either.

### The Case

This unfortunate saga began on June 27, 1991, when Mrs. Nam came under the care of the Germantown Health Center of the Montgomery County Department of Health for pregnancy management. Her estimated date of confinement was January 3, 1992. At issue here is a visit to that clinic on December 23, 1991, with complaints of a fever of 102 to 103 degrees since December 12, nausea, vomiting, and a poor appetite. She was referred to Ms. James, a nurse clinician, who diagnosed flu of several weeks' duration. She prescribed bedrest, increased fluids, and Tylenol. She also recommended a test for Chlamydia. Sometime that night Steve Nam assisted his wife to the bathroom and noticed blood spots on her underwear. He then took her to Shady Grove Hospital emergency room on December 24. The baby, Elizabeth, was born at 3:57 A.M. on that date. She was not breathing and was in cardiac arrest. We are told that this child was in a continuous vegetative state until her death on September 9, 1992.

## PROCEDURAL HISTORY

On August 12, 1994, the Nams filed a ten-count claim in the Health Claims Arbitration Office (HCAO) against the County; Montgomery General Hospital, Inc.; and Emergency Medicine Associates, P.A. The complaint alleged actions in wrongful death, negligence, survival, and loss of consortium. On December 16, 1994, a week before the applicable statute of limitation would have barred suit, the Nams filed a first amended claim which added John Doe, M.D., as a party defendant. The claim alleged that "John Doe, M.D." was the County employee who allegedly negligently treated Ms. Nam on December 23, 1991.

The parties proceeded to discovery. In June of 1995, Montgomery County, in its answer to interrogatories, identified Lizzie James, R.N., as one of its employees who had contact with Mrs. Nam in the emergency room. Plaintiffs deposed Ms. James in August of that year. It was then established that she was the nurse on duty who diagnosed and treated Mrs. Nam. Although the Nams thus then learned that Ms. James was the "John Doe" they had identified in their pleadings, they did not amend their claim.

On October 23, 1995, the Nams; the County; Montgomery General Hospital, Inc.; and Emergency Associates, P.A.; executed and filed with HCAO a joint election to waive arbitration. The Nams inform us in their brief:

> At this time, party Defendant or Health Care Provider, John Doe, M.D., had not yet been served, had not answered the Claim, and consequently did not join or sign the Joint Election to Waive Arbitration even though the allegations against John Doe, M.D. were based primarily on respondeat superior and identical to the claims made against the County. In fact, John Doe, M.D., and Montgomery County were named in the same Counts alleging identical negligence under respondeat superior.

Oddly enough, given the date of filing of the circuit court action which we shall hereafter set forth, on January 3, 1996, the Health Claims Arbitration Office issued an order "that the

case ... be ... transferred to the Circuit Court for Montgomery County, Maryland," reciting that *"[a]ll* parties ha[d] joined in a Waiver of Arbitration under the provisions of the Annotated Code of Maryland, Courts and Judicial Proceedings Article, Section 3–2A–06A...." (Emphasis added). Pursuant to that waiver the Nams filed suit on December 17, 1995, in the Circuit Court for Montgomery County against the County; Montgomery General Hospital, Inc.; Emergency Medicine Associates, P.A.; and John Doe, M.D.

On January 18, 1996, counsel for the Nams filed in the circuit court an order saying, "[T]he Plaintiffs ... hereby dismiss with prejudice Defendant John Doe, M.D. *ONLY."* (Capitalization and underscoring in the original). On February 9, 1996, an order of dismissal with prejudice as to defendants Montgomery General Hospital and Emergency Medicine Associates, P.A., was filed by counsel for the parties. Thus, at this point, the only remaining defendant was Montgomery County. On March 1, 1996, it filed a motion to dismiss which said the case was "barred by the doctrine of governmental immunity" because the County "enjoys governmental immunity for the performance of governmental functions" and "[t]he alleged acts of negligence in this case arise out of the performance of a governmental function."

On April 10, 1996, the Nams filed an answer to the motion to dismiss and a motion to stay the proceedings. The motion to stay recited, among other things, that the Nams "ha[d] contemporaneously filed with this motion to stay their response to the motion to dismiss, and an amended Statement in Support of Claim ... in the underlying Health Claims Arbitration action which amends the name of a John Doe defendant to a nurse employed by the County in its Health Department Clinic." Although the caption of the amended claim at HCAO listed as defendants the County; Montgomery General Hospital, Inc.; Emergency Medicine Associates, P.A. as well as "John Doe, M.D., now known as Lizzie L. James, R.N.", the allegations in the claim were solely against Ms. James.

The panel chairman in HCAO ultimately filed a memorandum and order which said in pertinent part:

The above-captioned matter was remanded to the undersigned arbiter for purposes of deciding procedural motions filed in the above-captioned claim. This case had previously been assigned to the undersigned. Based on the filing of an election to waive arbitration, the claim was removed to the Circuit Court. Various procedures took place in the Circuit Court which have resulted in the claimants filing a Second Amended Complaint, amending their claim from the assertion of a John Doe defendants as a health care provider to amend that to name Lizzie James as the health care provider. The claimants contend that the waiver was not effective, as all parties did not join in the waiver and, particularly, that John Doe was not represented or a signator to the waiver. Lizzie James, through counsel, has filed a Motion to Dismiss the Second Amended Complaint, arguing alternatively that the waiver was effective as to all parties or the claim is barred by the Statute of Limitations.

After consideration of the pleadings and arguments submitted herein, it is the decision of the arbiter that the election to waive arbitration did not include all parties and that the John Doe party did not join in such waiver. Such John Doe party remained a party to the above-captioned Health Claim Arbitration and the jurisdiction of the Health Claims Arbitration Office was maintained.

Therefore, the Motion to Dismiss the Second Amended Complaint must be denied. However, the arbiter finds that the amendment naming Lizzie James as the health care provider comes too late. The arbiter finds that there is no basis to use a relation back theory, as this is not a mere misnomer or correction of a previously identified party, but the substitution of an entirely new defendant as the sole remaining defendant in this case.

Based upon this, the arbiter grants the Motion to Dismiss finding that the claim is barred by the applicable Statute of Limitations.

One would infer from that which appears in the record extract that this order was filed on or about April 30, 1997.

On June 2, 1997, the Nams filed a new action against the County and "Lizzie James, formerly known as John Doe, M.D." In it they formally rejected the order of the HCAO. The County and Ms. James filed an answer and "Action of Rejection" which, among other things, asserted that the complaint was "barred by governmental immunity and limited by the Local Government Tort Claims Act," was "barred by waiver," "barred by the statute of limitations," and barred by "judicial estoppel." On December 4, 1997, an order was passed by the circuit court consolidating the two actions.

The County and Ms. James filed a "Motion to Dismiss and/or Motion for Summary Judgment." In opposition to this motion the Nams in their memorandum of law contended, among other things:

> Defendant Montgomery County does not possess governmental immunity from the claims alleged in the Plaintiffs' complaint. Montgomery County, Maryland, is a charter county created pursuant to Article 25A and, therefore, is included in the meaning of "local government" as defined in Courts and Judicial Proceedings Article Section 5–401(d)(1) of the Annotated Code of Maryland. Defendant Lizzie L. James, R.N., whose negligence is also at issue, is an employee of the Defendant, Montgomery County, Maryland and has been included in this case. As such, Montgomery County, Maryland, has waived sovereign immunity as the acts of its employees under the local government tort claims act established in Courts and Judicial Proceedings Article § 5–403.

It also asserted that there was not a lawful waiver of arbitration, that the second amended statement of claim relates back to the date of the first claim, and that no new party was added but the second amended statement corrected a misnomer.

Without setting forth any reasons but referring to "consideration of any oral argument," the circuit court on May 11,

1998, granted the "Motion to Dismiss and/or Motion for Summary Judgment" and dismissed the action with prejudice.[1]

## Contentions

The Nams contend:

1. Health Claims Arbitration had continuing jurisdiction over the original action as health care provider John Doe, M.D. never participated in the waiver therefore all parties did not waive arbitration.

2. Appellants' second amended statement in support of claim relates back to the original filing of the first amended statement in support of claim.

3. The substitution of "John Doe, M.D., now known as Lizzie James, R.N." does not add a new party beyond the statute of limitations but rather corrects the true name of the John Doe health care provider.

4. Health care provider Lizzie James, R.N. was not prejudiced by the correction of the named health care provider as she had notice prior to the tolling of the statute of limitations individually and through her continuing employer, Montgomery County.

5. The use of John Doe, M.D. or a fictitious name was proper and should be allowed under Maryland law.

6. Montgomery County and James are not immune from suit under the local tort claims act and Montgomery County is required to defend and pay on any judgment against James.

The appellees contend:

1. Montgomery County enjoys governmental immunity from claims of negligence when it performs a governmental function.

---

1. It is always helpful to appellate courts to have the benefit of the reasoning of a lower court judge. The author of this opinion has made it a practice over the years in preparation for appellate argument to first read the opinion, oral or written, of the trial court judge, together with any opinion of the Court of Special Appeals, believing that thereby one obtained an unbiased, unprejudiced overview of the case.

2.  The health claims panel chair did not have jurisdiction to handle the second amended statement in support of claim.

3.  Under any theory permitting amendment of pleadings, the Nams could not include James in either the HCAO claim or the Circuit Court proceeding.

We distill the contentions into:

1.  Is the County a proper party to this action?

2.  Are the Nams now barred from filing a claim against Ms. James?

## The County

The Nams misunderstand the potential basis for any liability on the part of the County. We begin with the fact that deeply ingrained in Maryland law is the doctrine of governmental immunity. In *State v. B. & O. R.R. Co.*, 34 Md. 344, 374 (1871), *aff'd*, 21 Wall. 456, 88 U.S. 456, 22 L.Ed. 678 (1874), Chief Judge Bartol pointed out for the Court, "The right to sue the State was given by the Act of 1786, ch. 53, but this was afterwards repealed and the right taken away." The repeal came by Chapter 210 Acts of 1820. *State v. Wingert*, 132 Md. 605, 611, 104 A. 117 (1918). Moreover, governmental immunity may not be waived. *See Bd. Of Education v. Alcrymat Corp.*, 258 Md. 508, 516, 266 A.2d 349, 353 (1970) ("[T]he law is well established that counsel for the State or one of its agencies may not either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity in the absence of express statutory authorization, or by necessary implication from a statute [.] . . ."). In *Cox v. Anne Arundel County*, 181 Md. 428, 31 A.2d 179 (1943), the Court stated:

Governments are immune from suit by individual citizens, unless the right is expressly given. The reason for this immunity is stated by Mr. Justice Holmes in the case of *Kawananakoa v. Polyblank*, 205 U.S. 349, [352,] 27 S.Ct. 526, 527, 51 L.Ed. 834, 'Some doubts have been expressed as to the source of the immunity of a sovereign power from

suit without its own permission, but the answer has been public property since before the days of Hobbes. Leviathan, chap. 26, 2. A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there can be no legal right as against the authority that makes the law on which the right depends.' When the state gives a city or county part of its police power to exercise, the city or county to that extent is the state.

*Id.* at 431, 31 A.2d at 181.

In *Bradshaw v. Prince George's County*, 284 Md. 294, 300, 396 A.2d 255, 259 (1979), Chief Judge Murphy, after quoting from the opinion by Judge Barnes for the Court in *Godwin v. County Comm'rs*, 256 Md. 326, 334-35, 260 A.2d 295, 299 (1970), discussing the extent of a county's governmental immunity, said for the Court, "[A] municipality or county is liable for its torts if it acts in a private or proprietary capacity, while it is immune if acting in a governmental capacity." He further said, quoting from *Robinson v. Board of County Comm'rs*, 262 Md. 342, 345, 278 A.2d 71, 73 (1971), "We have consistently refused to 'enlist in the crusade against sovereign immunity and to join the ranks of those courts' which have judicially abrogated the doctrine." The acts here involve "governmental capacity." *Bradshaw*, 284 Md. at 300, 396 A.2d at 259.

■ It is the belief of the Nams that passage by the General Assembly of the Local Government Tort Claims Act (the Act), found in Maryland Code (1974, 1995 Repl.Vol., 1997 Cum.Supp.) Sections 5-301 *et seq.* of the Courts and Judicial Proceedings Article, changes all of this. Such is not the case. Section 5-302(a) requires "[e]ach local government [to] provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government." Section 5-303(b) provides that, other than for punitive damages, "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within

the scope of employment with the local government." Nowhere in the Act, however, is there a waiver of immunity so that the governmental entity is subject to being made a party to an action based upon its employee's or agent's tortious acts. The governmental entity's liability is analogous to a public liability policy on an automobile. The insurance company is liable for such damages as its assured may inflict, but, generally speaking, the insurance company is not an entity which may be sued for its assured's torts.

We have been cited to no case of the Court of Appeals construing the liability of a county under the Act nor are we aware of any. However, this Court had the issue before it in *Khawaja v. City of Rockville*, 89 Md.App. 314, 598 A.2d 489 (1991), *appeal dismissed*, 326 Md. 501, 606 A.2d 224 (1992). In that case this Court stated:

A legislative waiver of immunity by a municipality is ineffective unless its legislature has clearly stated an intention to waive immunity and either there are funds available for satisfying the judgment or the defendant has the power to raise funds for that specific purpose. *Heffner v. Montgomery County*, 76 Md.App. 328, 337, 545 A.2d 67 (1988). The [Local Government Tort Claims Act], by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity. Viewing [this statute] in light of its statement of purpose, the LGTCA waives only those immunities the government could have in an action raised against its employee. The statute requires the government to assume financial responsibility for a judgment against its employee by abolishing that immunity the government may have had against responsibility for the acts of its employees. *The Act, however, does not create liability on the part of the local government as a party to the suit.* (Emphasis added).

*Id.* at 325–26, 598 A.2d at 494–95.

We have repeated this view of the Act as recently as in *Williams v. Prince George's County*, 112 Md.App. 526, 554, 685 A.2d 884, 898 (1996), where we stated, "Under the

LGTCA, the local government must defend and indemnify an employee for acts occurring within the scope of his or her employment. The LGTCA, however, does not authorize the maintenance of a suit directly against the local government. *Khawaja,* 89 Md.App. at 325–26, 598 A.2d 489."

It follows, therefore, that the circuit court properly dismissed the action against the County.

### Ms. James

In our consideration of the claim against Ms. James we shall assume, without deciding, that the HCAO panel chairman correctly decided that HCAO retained jurisdiction.

The Nams assert in their brief, "The fictitious name or moniker John Doe, M.D. was used [in their first amended statement in support of claim filed with HCAO] as the signature of the clinician on the entry of the medical record for December 23, 1991 was illegible." For this reason they would have us hold that limitations are not applicable to the claim against Ms. James.

■ Pleadings against fictitious persons are often called "John Doe" pleadings. There is generally no authority to proceed against a fictitious party in the absence of statute or rule. 59 Am.Jur.2d *Parties* § 16 (1987, 1998 Cumm. Supp.). While some states by statute or rule authorize John Doe pleadings and then the subsequent substitution of the person's true name when discovered, Maryland is not one of them. Although Maryland does not recognize "John Doe" pleadings directly, we do permit liberal amendment of pleadings to add a party or correct the misnomer of a party. *See* Maryland Rule 2–341(c). *See also Osheroff v. Chestnut Lodge,* Inc., 62 Md. App. 519, 526, 490 A.2d 720, 723, *cert. denied,* 304 Md. 163, 497 A.2d 1163 (1985) ("Maryland is most liberal in allowing amendments so that causes of action may be heard on the merits." (citing *Crowe v. Houseworth,* 272 Md. 481, 325 A.2d 592 (1974)); *Gensler v. Korb Roofers, Inc.,* 37 Md.App. 538, 378 A.2d 180 (1977); and *Staub v. Staub,* 31 Md.App. 478, 356 A.2d 609, *cert. denied,* 278 Md. 735 (1976)).

Maryland recognizes the doctrine of "relating back." The doctrine of relation back provides that if the factual situation remains essentially the same after the amendment as it was before it, the doctrine of relation back applies and the amended cause of action is not barred by limitations. *Smith v. Gehring,* 64 Md.App. 359, 364, 496 A.2d 317, 319 (1985). In other words, if an amendment merely corrects the name of an original party, as opposed to adding a new party, the doctrine is applicable. *Smith,* 64 Md.App. at 364, 496 A.2d at 319. Conversely, if a new defendant is added, the doctrine of relation back does not apply. *Id.,* 496 A.2d at 320. In *Smith,* Judge William H. Adkins, II, said for the Court:

> In each of these cases, the correct defendant—the one actually intended to be sued—was served with process before limitations had run. This fact, however, is not critical. The critical factors are (1) who, on the facts of the case, was the appropriate defendant, and (2) whether that party had notice of his, or her, or its, intended status as defendant within the limitations period. In each of the three cases we have discussed, the significance of service of process was that by that means notice to the intended defendant was made apparent. In *McSwain [v. Tri–State Transportation Co. Inc.,* 301 Md. 363, 483 A.2d 43 (1984),] the Court of Appeals relied not only on service of process, but also on pre-suit notice to the intended defendant, Transportation. That service of process on the intended defendant is not essential to stop the running of limitations appears from our decision in *Reed v. Sweeney,* 62 Md.App. 231, 488 A.2d 1016 (1985).

*Id.* at 365, 496 A.2d at 320.

Applying the *Smith* two-part analysis outlined above to the facts at hand, we hold that the second amended claim does not relate back to the first amended claim. It is unclear whether the Nams met the first factor. Although the Nams clearly initially intended to sue the health care provider who treated Mrs. Nam, *i.e.,* Ms. James, their later actions belie this point. Specifically, once the Nams learned of Ms. James' identity they failed to amend their pleadings to reflect this

information. Rather, the Nams waited almost eight months between learning of John Doe's identity and amending their pleadings. During the intervening time they never notified Ms. James of their intent to sue by service of process. In fact, they moved to dismiss John Doe from the suit with prejudice. These actions clearly evince an intent not to sue the treating health care provider. Moreover, it appears that the Nams amended their pleadings only in response to the County's filing a motion for summary judgment based on sovereign immunity.

Even if we were to find that the Nams intended to file suit against Ms. James, the Nams have failed to show that Ms. James had notice of this intent. Ms. James was never served with notice of process until nearly four and one-half years after the incident precipitating the lawsuit. No attorney entered an appearance on her behalf. There is no evidence that anyone was negotiating with the Nams on her behalf. The Nams posit that Ms. James was on notice because her employer, Montgomery County, was on notice. This argument attempts, but unsuccessfully, to camouflage the point that there is no evidence that Ms. James had notice of any kind.

The Nams are of the view that the notice to Montgomery County is sufficient. We disagree. The fact that the County knew of the suit and has an obligation under certain circumstances to pay a judgment does not suffice to eliminate the need for Ms. James to be sued within the period of limitations and for there to be service of process upon her. This is so because she conceivably might end up with personal liability. Section 5–302(d) makes "[t]he rights and immunities granted to [her] contingent on [her] cooperation in the defense of [the] action." Section 5–302(b) of the Act sets forth circumstances that might lead to execution against her. In this case the complaint in the circuit court does not specify a dollar amount of claimed damages. We have no idea what a jury might render as a verdict were this case to go to trial and be decided adversely to Ms. James. It must not be forgotten,

however, that Section 5–303(a) states, "The liability of a local government may not exceed $200,000 per an individual claim...." Thus, it is possible if this case were tried that Ms. James might end up with personal liability. It follows therefore that the assertion by the Nams that because the County has to pay the damages then notice to it is sufficient must fall. Moreover, we observe that their contention is like saying that notice to an automobile liability carrier of a claim against its assured would make unnecessary the filing of a suit against that assured within the period of limitations. Such is not the law. We hold that it was necessary for Ms. James to be sued within the period of limitations. She was not. The John Doe filing does not suffice. This was no misnomer, or correction of a previously identified party, as the HCAO panel chairman correctly held.

Alternatively, we hold that the Nams are barred by estoppel from asserting their claim against Ms. James.

In *WinMark Ltd. v. Miles & Stockbridge*, 345 Md. 614, 693 A.2d 824 (1997), Judge Rodowsky said for the Court:

The concept of judicial estoppel is perhaps best presented by an illustration. In *Kramer v. Globe Brewing Co.*, 175 Md. 461, 2 A.2d 634 (1938), Kramer had been injured when a beer truck in which he was riding as a helper overturned. Kramer considered that he had been hired by the driver, acting without any authority of the brewery, and that, as helper, he would be paid by the driver out of the driver's wages from the brewery. *Id.* at 463, 2 A.2d at 634. When Kramer sued the brewery and the driver in a common law tort action, the brewery raised the defense of workers' compensation exclusivity, averring that Kramer was its employee. After obtaining a voluntary dismissal without prejudice of the tort action, Kramer sought workers' compensation. It was denied by the Workers' Compensation Commission, and that denial was affirmed in the circuit court. *Id.* at 466, 2 A.2d at 636. This Court reversed and remanded, setting forth the rationale behind the doctrine of judicial estoppel, as follows:

" 'If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of the law, available only between those who consented to its exercise, could be set at naught by all. But the rights of men, honest and dishonest, are in the keeping of the courts, and consistency of proceeding is therefore required of all those who come or are brought before them. It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose.' "

*Id.* at 469, 2 A.2d at 637 (quoting *Bigelow on Estoppel* 783 (6 th ed.) and citing *Ohio & Mississippi Ry. Co. v. McCarthy*, 96 U.S. 258, 267–68, 24 L.Ed. 693, 696 (1877) ("Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.")).

*Id.* at 620–21, 693 A.2d at 826–27.

*Cloverfields Imp. v. Seabreeze Prop.*, 280 Md. 382, 373 A.2d 935, *on motion for reconsideration*, 280 Md. 382, 374 A.2d 906 (1977), is also instructive. There, on appeal to the Court of Appeals, the appellant, Cloverfields, had contended it had the right to collect a maintenance charge from all of the lots in a subdivision. The Court of Appeals did not address the issue in its opinion, it said, "because of the concession in open court at the time of oral argument." *Id.* at 401, 374 A.2d at 907. It further said, however:

A motion for reconsideration is now made with a request that we specifically consider this portion of Cloverfields' argument because Seabreeze is now taking the position that this concession did not extend to any lots owned by Seabreeze under either the original or any other conveyances to it and that the maintenance charge would be payable with

respect to any such lots only from the time that such a lot was transferred by Seabreeze to a third party.

*Id.* On the motion for reargument the Court said, "There is no room for misunderstanding as to what was said," and then proceeded to quote from the tape of the argument. *Id.* It further said:

Given the statement that "[t]here [was] no argument here about lot charges or who should maintain the recreation area or collect [for] the lots" and the asserted willingness of Seabreeze to assign to Cloverfields the right to collect the lot charge if Cloverfields recognized that the recreational area was to be held in trust "for the benefit of all lot owners at Cloverfields in common," it follows that the concession concerned all lots, which would include those lots owned by Seabreeze. We hold this to be a binding concession. [Citing cases and other authority].

This was a stipulation or concession in open court on behalf of one of the parties as to a method for termination of a part of the litigation which was duly accepted by the other party, a concession intended to persuade this Court that it was unnecessary for us to address a certain portion of the contentions of the plaintiff below in this proceeding. Long ago in *Lewis v. Wilson,* 151 U.S. 551, 555, 14 S.Ct. 419, 38 L.Ed. 267 (1894), Mr. Justice Brewer observed for the Court, "A man may continue litigation and stand on his rights, or he may waive some of his rights for the sake of terminating litigation...." Seabreeze has done just this. Accordingly, we hold that it is obliged to assign to Cloverfields its right to collect lot charges for the maintenance of the recreational area for all lots of the subdivision, including those still owned by Seabreeze, provided that Cloverfields recognizes that the recreational area is held in trust for the benefit of owners of all lots in the subdivision, which it says it is willing to do.

*Id.* at 403–04, 374 A.2d at 908–09.

In this case we have the Nams joining in an election to waive arbitration after they had full knowledge of the identity

of the health care provider whom they deemed to have been negligent and after they had failed to amend their complaint before the HCAO to include that person as a defendant. Thereafter, they filed a complaint in the circuit court in which they continued to name "John Doe, M.D." as the person guilty of negligence at whom their complaint was directed. They then dismissed "John Doe, M.D." as a party defendant, with prejudice. Then, some months later, no doubt as a result of the fact that Montgomery County, Maryland, was left as the only party defendant and was asserting governmental immunity, they want to come back and amend their claim in the Health Claims Arbitration Office by making Ms. James a defendant. They cannot blow hot and blow cold, or, as the Court of Appeals quoted in *Kramer v. Globe Brewing Co.*, 175 Md. 461, 469, 2 A.2d 634, 637 (1938), "one cannot play fast and loose." We regard them as estopped.

**JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.**