Marc WILLIAMS,

v.

### PRINCE GEORGE'S COUNTY, MD, et al.

No. Civ.A. DKC 2000–184.

United States District Court, D. Maryland.

Aug. 6, 2001.

See also 157 F.Supp.2d 588 and 157 F.Supp.2d 607.

Rosalyn E. Pugh, Law Office, Landover, MD, Bryan Andrew Levitt, Law Office, Baltimore, MD, for Plaintiff.

Crystal Dixon Mittelstaedt, Office of Law for Prince, Upper Maroboro, MD, for Defendants.

### *MEMORANDUM OPINION*

CHASANOW, District Judge.

Presently pending is the motion for summary judgment by Defendants Prince George's County ("County"); Police Chief John S. Farrell; and Officers Eric Bowman and Alfonso Giscombe.[1] Plaintiff brings the following federal and state causes of action against some or all Defendants: (1) constitutional violations, pursuant to 42 U.S.C. § 1983 (count I); (2)

battery (count II); (3) intentional infliction of emotional distress (count III); (4) negligent hiring, retention and supervision (count IV); (5) malicious prosecution (count V); and (6) false arrest (count VI).[2] No hearing is deemed necessary and the court now rules pursuant to local rule 105.6. For the reasons that follow, the court shall grant the motion.

### I. Background

The following facts are undisputed or presented in the light most favorable to Plaintiff, Marc Williams. On January 20, 1997, Williams and several friends attended C.J.'s Nightclub ("C.J.'s") in Oxon Hill, Maryland.[3] A flower vendor at C.J.'s accused one of Plaintiff's friends, Dwight Vincent, of stealing flowers. A verbal exchange ensued between Vincent and the vendor, at which time three uniformed County officers, including Defendants Bowman and Giscombe, approached the table and forcibly removed Plaintiff and Vincent from the premises.

Once outside, the officers "brutally" beat the two, and then took Plaintiff to a hospital under "physical restraints" so that he could be treated for his injuries.[4] Plaintiff was then released from the hospital without being told that he was under arrest. Later that day, Plaintiff filed a complaint

---

1. While Defendants label their motion one for summary judgment, it is actually a motion for partial summary judgment as they do not move for judgment on all counts with respect to all Defendants.

2. Plaintiff's complaint has two counts numbered "five," malicious prosecution and false arrest. For purposes of this opinion and to alleviate confusion, the court has labeled the false arrest claim count VI.

3. Separate cases were filed by Plaintiff's friends, Dwight Vincent, DKC 2000–185, and William Roberts, DKC 2000–186.

4. It is unclear exactly where the alleged beating occurred. In Plaintiff's complaint and opposition memorandum, he alleges that the officers removed him from C.J.'s, beat him, and then transported him to the hospital. Paper no. 1 ¶¶ 15–17; paper no. 14 at 2–3. In his answers to interrogatories propounded by the County, Plaintiff contends that he was removed from C.J.'s, handcuffed, placed in a police car, and beaten while being driven away from the club, but it is unclear to where. He then asserts that he lost consciousness and later woke up in a hospital. *Id.*, Plaintiff's Answers to Interrogatories Propounded By . . . [the County], no. 13, at 7–8.

with the Prince George's County Police Department based on the incidents that had occurred earlier that morning.

On January 22, Bowman obtained a warrant for Plaintiff's arrest, stemming from the January 20 incident, but Plaintiff was not arrested until February 26. He was released the next day into his parent's custody. Plaintiff was charged with disorderly conduct, resisting arrest, and malicious destruction of property. The case against Plaintiff was adjudicated in a Maryland Circuit Court, and the charges were placed on the stet docket.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co., Inc. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R.Civ.P. 56(c); *Pulliam,* 810 F.2d at 1286 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex,* the Supreme Court stated:

In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment

may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

### A. 42 U.S.C. § 1983 claims against the County

Defendants argue that summary judgment is appropriate as to the County because Plaintiff has failed to plead or otherwise show that his alleged injuries resulted from a County policy or custom. In response, Plaintiff contends that he has alleged sufficient facts to establish that an unconstitutional policy or custom caused his injuries. Plaintiff alleges that his constitutional rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution were violated by members of the Prince George's County Police Department. Plaintiff alleges that Police Chief Farrell knew or should have known of the individual officers' actions and gave them express or implied authority to make arrests and fulfill their duties as officers. He alleges that the County knew of their violent propensities but failed to terminate them. He further alleges that the County and Farrell acquiesced in and promoted the officers' actions. In his answers to interrogatories propounded by the County, Plaintiff also asserts that although Farrell and others in County government are aware of the Police Department's reputation for use of excessive force, they have taken no action to prevent it.

■ There is no respondeat superior liability under § 1983, i.e., the County cannot be held liable under the statute simply because there exists an employer-employee relationship between it and the officers who allegedly caused Plaintiff's injuries. *Monell v. Dep't of Social Services of the City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The County can be sued directly under § 1983 only if the alleged unconstitutional action Plaintiff complains of resulted from a County policy, practice or custom. *Id.* at 690–91, 98 S.Ct. 2018 (explaining that liability can be imposed if the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, etc. promulgated by the government entity's officers or a governmental custom). Municipal liability will attach only when the policy or custom is both fairly attributable to the municipality as its own and is the moving force behind the specific constitutional violation. *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987), *cert. denied sub nom. City of Fayetteville v. Spell*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (citations and internal quotation marks omitted). When a policy is itself unconstitutional in that "it directly commands or authorizes constitutional violations," a plaintiff need not independently prove that the policy caused his or her constitutional violation. *See Monell*, 436 U.S. at 661, 98 S.Ct. 2018 (unconstitutional policy required pregnant employees to take unpaid leave before it was medically necessary to do so); *Spell*, 824 F.2d at 1387–88 (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("no evidence ... needed [in such a case] other than a statement of the policy")). However, when, as in this case, there is no facially unconstitutional policy at issue, municipal liability results only if the plaintiff proves that the policy or custom alleged caused his or her constitutional violation. *Spell*, 824 F.2d at 1387. "Neither the existence of such a policy or custom nor the necessary causal connection can be established by proof alone of the single violation charged." *Id.* at 1388.

■ While a plaintiff asserting a § 1983 claim against a municipality is not subjected to a heightened pleading standard,

*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (requiring in § 1983 action only a short plain statement in the pleadings to put defendants on notice of the claims being asserted); "[t]he substantive requirements for proof of municipal liability are stringent," *Jordan v. Jackson,* 15 F.3d 333, 338 (4th Cir.1994). Indeed, heavy reliance is placed on discovery controls and summary judgment to weed out unmeritorious § 1983 suits before trial. *Id.* at 340.

Plaintiff's complaint fails to point to any official County policy that he alleges caused his injuries. In his opposition memorandum, however, he argues that Farrell, whom he sues in his official capacity, and others in the County are aware of the Police Department's "reputation" for using excessive force, but have failed to stop it. Thus, he appears to argue that there is a practice or custom of excessive force among County officers. A widespread custom by County officers may be attributed to the County if "the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell,* 824 F.2d at 1387. A plaintiff can prove actual knowledge by showing recorded reports to or discussions by a municipal government body or constructive knowledge by showing that the practices have been so widespread or flagrant that officials should have known about them. *Id.*

In the instant case, Plaintiff fails to show a widespread custom of excessive force on the part of County officers. He merely points to his own interrogatory response in which he claims (1) that in 1997, he filed a complaint on January 20, 1997 based on his run-in with the Defendant officers at C.J.'s, and that no action was taken against them, and (2) that County officers have a reputation for excessive force, and the County is aware of it, but has done nothing to curb it. He fails anywhere to point to one other specific instance where County officers, including the individual Defendants, used excessive force or engaged in any other constitutional violation. Even drawing all reasonable inferences in Plaintiff's favor, such proof is wholly insufficient to create a genuine issue of material fact that a widespread custom of excessive force exists and/or caused his injuries. *See Carter v. Morris,* 164 F.3d 215, 220 (4th Cir.1999) ("meager history of isolated incidents [fails to prove] the widespread and permanent practice necessary to establish municipal custom") (citations and internal quotation marks omitted); *Spell,* 824 F.2d at 1391 (proof of a single constitutional violation by police officers fails to support an inference that the violation resulted from either a "municipal policy of deficient training" or "a condoned custom of comparable practices") (citing *Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791; *Wellington v. Daniels,* 717 F.2d 932, 936 (4th Cir.1983)); *see also Groman v. Township of Manalapan,* 47 F.3d 628, 637 (3d Cir.1995) (vague assertions that police department failed to investigate past wrongdoings by its police officers and allegations concerning the plaintiff's own alleged constitutional violation were insufficient to establish a policy or custom of negligent supervision under § 1983). Because Plaintiff presents insufficient evidence that a custom of excessive force is widespread, he also fails to show that Farrell and others in County government knew or should have known about any such propensity for excessive force so as to impute liability to the County.

Plaintiff also argues that the County has not put forth evidence to rebut his asser-

tion that his violations were caused by a County custom, policy or practice, and that the County failed to respond to interrogatories and Requests for Productions of Documents, which he apparently asserts were necessary for him to prove his case. Plaintiff misunderstands his burden. The County was not required to produce evidence to negate Plaintiff's claims. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (explaining that Rule 56 does not require the moving party to "support its motion with affidavits or other similar materials negating the opposing party's claim"). Moreover, a principal purpose of summary judgment "is to dispose of factually unsupported claims," and where, as here, the nonmoving party bears the burden of proof at trial, he or she must show that a genuine issue of material fact exists in order to proceed to trial. *Id.* As already explained, Plaintiff fails to meet this burden. Further, if, as Plaintiff contends, the County failed to respond to his discovery requests, Plaintiff could have, but did not, file with this court a motion to compel discovery. Instead, he allowed the discovery period to close without seeking assistance from this court. Plaintiff cannot now be heard to complain about any alleged failure on the County's part to respond to his discovery requests, and the County's motion for summary judgment is granted as to count I.[5]

### B. Tort Claims against the County

Defendants assert that the County is entitled to summary judgment with respect to Plaintiff's common law tort claims

because, as a municipality, it is immune from suit based on the tortious acts of its employees. Plaintiff appears to agree and withdraws his claims of battery (count II) and negligent hiring, retention, and supervision (count IV) against the County. Defendants contend that summary judgment in favor of the County is also proper as to his claim of intentional infliction of emotional distress (count III), and apparently all other state law claims for the same reason. *See* paper no. 11 at 6 ("Based on the above case law, the County is immune from liability on all claims asserted against it").

A state's right to governmental immunity is "deeply ingrained in Maryland law" and may not be waived in the absence of express or implied statutory authorization. *Nam v. Montgomery County*, 127 Md.App. 172, 182, 732 A.2d 356, 362 (1999); *see also Khawaja v. Mayor and City Council, City of Rockville*, 89 Md.App. 314, 325, 598 A.2d 489, 494 (1991) (explaining that Local Government Tort Claims Act ("LGTCA") Md.Code Ann., Cts. & Jud. Proc. § 5–401 *et seq.*, which in certain instances, imposes liability on local governments, does not operate as a waiver of governmental immunity). A municipality, such as the County, is also entitled to governmental immunity. *Nam*, 127 Md. App. at 183, 732 A.2d at 362. ("When the state gives a city or county part of its police power to exercise, the city or county to that extent is the state."). Specifically, municipalities are generally immune from

---

**5.** Defendants contend that to the extent Plaintiff's federal claims survive, they are Fourth Amendment excessive force claims. Although Plaintiff's complaint alleges that his claims arise under the Fifth and Sixth Amendment as well as the Fourth, in his opposition memorandum, he agrees with Defendants that he is asserting excessive force claims in violation of his Fourth Amendment rights. Paper no. 14

at 13; *see also Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (holding that claims of excessive force should be analyzed under the Fourth Amendment's objective reasonableness standard). Thus, Defendants' motion for summary judgment is granted as to Plaintiff's Fifth and Sixth Amendment claims.

common law tort suits when engaged in governmental, as opposed to proprietary, acts. *Id.; see also Ashton v. Brown,* 339 Md. 70, 101, 660 A.2d 447, 462–63 (1995) (citing *Clea v. City of Baltimore,* 312 Md. 662, 667, 541 A.2d 1303, 1305 (1988)). "The operation of a police force is a governmental function." *Hector v. Weglein,* 558 F.Supp. 194, 206 (1982) (citations omitted). Thus, the County is immune as to common law tort claims asserted against it based on torts committed by its police officers. *See Williams v. Prince George's County,* 112 Md.App. 526, 532, 554, 685 A.2d 884, 887, 898 (1996) (holding that the County was shielded by governmental immunity when tort claims were asserted against it in its individual capacity for torts allegedly committed by County officers).

Plaintiff agrees that summary judgment is proper as to his claims against the County for battery and negligent hiring, retention, and supervision. He fails to argue that judgment is not also proper as to his common law tort claims of intentional infliction of emotional distress (count III), malicious prosecution (count V), and false arrest (count VI) against the County, and summary judgment is thus granted in favor of the County with respect to those claims as well.

### C. Claims against Officer Farrell

■ Plaintiff sues Police Chief Farrell in his official capacity. Defendants argue that Plaintiff's official capacity suit is really a suit against the County, and that because judgment is appropriate as to the government, it is also proper as to Farrell. Defendants also contend that Plaintiff's complaint does not assert constitutional claims against Farrell but only state common law claims.[6] Plaintiff argues, however, that "[t]he Complaint establishes Claims against John Farrell, ... in his official capacity under Title 42 ... Section 1983 (Counts II, III, & IV)." Assuming Plaintiff does assert federal constitutional claims against Farrell, they still fail.

■ To support his claim, Plaintiff alleges that Farrell: (1) knew or should have known of the Defendant officers' unconstitutional actions but gave them authority to make arrests and fulfill their duties as officers; (2) acquiesced in and promoted the officers' actions; and (3) failed to terminate them despite knowledge of their violent propensities. If, as in this case, the government entity has received an opportunity to respond to a suit filed against one of its agents in his or her official capacity, the suit is in all respects, other than name, a suit against the entity. *Kentucky v. Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Monell,* 436 U.S. at 690 n. 55, 98 S.Ct. 2018 (explaining that an official-capacity suit is generally another way of pleading a cause of action against the entity of which the officer is an agent). While in a personal action suit, the plaintiff need only show that the official, acting under color of state law, violated his or her federal right, in an official capacity suit, the plaintiff must show the government entity itself was the "moving force" behind the violation. *Graham,* 473 U.S. at 166, 105 S.Ct. 3099 (citations omitted). Thus, in an official-capacity suit, a plaintiff must show that the entity's policy or custom played a role in the violation of federal law. *Id.* As already

---

**6.** If Defendants are correct that Plaintiff essentially alleges only state common law claims against Farrell in his official capacity, Farrell is shielded by the County's governmental immunity. *See Hector,* 558 F.Supp. at 206 (explaining that the Baltimore City Council and former police commissioner, sued in their official capacities, would be entitled to the same immunity as the municipality with respect to common law claims asserted against them).

explained, Plaintiff attempts to prove his case by showing that the individual officers had a propensity for using excessive force, of which the County, through Farrell and others, knew. However, he presents no evidence of the existence of a widespread use of excessive force on the part of the individual Defendants or other County officers, of which Farrell knew or should have known. Because Plaintiff fails to show his injuries resulted from a County policy or custom, summary judgment is proper as to Farrell in his official capacity.

## D. Intentional Infliction of Emotional Distress

The individual Defendants contend as well that summary judgment is appropriate as to Plaintiff's intentional infliction of emotional distress claim because he fails to show that he suffered emotional distress as a result of Defendants' actions or that any emotional distress he did suffer was severe, as the tort requires. In response, Plaintiff alleges that he suffered "severe emotional distress, mental anguish, anger and anxiety." Paper no. 14 at 9. To support his claim, Plaintiff also contends that he has permanent scars on his right leg, lost his job when he was arrested "on the job" on charges that form the basis for this lawsuit, and now fears Prince George's County Police Officers.

To prove a claim of intentional infliction of emotional distress, Plaintiff must show: (1) Defendants' conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) a causal connection existed between the conduct and the emotional distress; and (4) the emotional distress was severe (the "severity" prong). *Caldor v. Bowden*, 330 Md. 632, 641–42, 625 A.2d 959, 963 (1993) (citing *Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611, 614 (1977)). Each element of the tort must be established by adequate

proof. *Caldor*, 330 Md. at 642, 625 A.2d at 963. To satisfy the severity prong, a plaintiff must show "he suffered a severely disabling emotional response to the defendants' conduct." *Harris*, 281 Md. at 570, 380 A.2d at 616; *see also Rich v. United States of America*, 158 F.Supp.2d 619, 629 (D.Md.2001) (plaintiffs' claim failed as they provided only an unsubstantiated allegation that they suffered "severe emotional distress, indignity, trauma, and pain and anguish"); *Caldor*, 330 Md. at 643–45, 625 A.2d at 964–65 (finding that Plaintiff failed to establish the severity prong after showing one visit to a psychologist, and offering his own testimony regarding weight loss and feeling upset, embarrassed, confused and "bad about himself" as a result of the defendant's conduct). Plaintiff fails to offer any proof that he suffered a disabling emotional response as a result of Defendants' conduct. Thus, he has not established an essential element of the tort, and his claim fails.

### E. Malicious Prosecution

One element of the tort claim of malicious prosecution is that the criminal prosecution terminate in the accused's/plaintiff's favor. *Maryland v. Meade*, 101 Md.App. 512, 530, 647 A.2d 830, 839 (1994) (citations omitted), *cert denied*, 337 Md. 213, 652 A.2d 669 (1995). The entry of a stet signifies that the state has decided not to proceed against the accused on that indictment or information at that time. *Id.* at 532, 647 A.2d 830, 647 A.2d at 839. Defendants argue that Plaintiff's claim of malicious prosecution fails because under Maryland law, "[d]isposition resulting in the case being placed on the stet docket is not a termination in Plaintiff's favor." Plaintiff argues that the proceedings were terminated in his favor because his charge has been on the stet docket for more than a year, and thus can

only be removed and Plaintiff brought to trial for good cause.

In *Meade*, the Court of Special Appeals examined whether the Plaintiff could assert a claim for malicious prosecution after a charge against him was placed on the stet docket. In that case, the court held that normally a stet does not terminate a proceeding in favor of the accused, even after a year has passed. *Id.* at 532–33, 647 A.2d at 839–40 (after a year, charge can be rescheduled for trial for good cause shown or by order of the court). The court noted that under the Restatement (Second) of Torts § 660, a termination of a proceeding in favor of an accused other than by acquittal is insufficient to meet the requirements of a malicious prosecution claim, "if the charge was withdrawn pursuant to an agreement of compromise with the accused...." *Meade*, 101 Md.App. at 531, 647 A.2d at 839. The court found that, while not identical, a stet and a "compromise" were similar because a stet cannot be entered over the objection of the accused, and on his or her own motion, the accused can have the case removed from the stet docket for up to a year and request that the court remove it thereafter. *Id.* at 533, 647 A.2d at 840. According to the court:

> If the accused wishes to clear his name, have a court or jury declare his innocence, and then pursue a tort action against his accuser, he has the ability to

do so by either objecting to the "stet" in the first instance or having the case removed from the docket subsequently. It seems to us unfair for the accused to have his cake and eat it too—to allow his guilt or innocence to remain undetermined in the criminal action and then to sue on the premise that the proceeding terminated in his favor.

*Id.* Thus, although Plaintiff argues that he has shown that the criminal case against him terminated in his favor, Maryland law indicates that it has not. Because Plaintiff fails to meet an essential element of the tort, summary judgment is granted as to his malicious prosecution claim.[7]

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is granted as to the County and Police Chief Farrell in his official capacity with respect to all claims. Summary judgment is also granted with respect to Plaintiff's claims of intentional infliction of emotional distress and malicious prosecution. Remaining for trial are § 1983 (Fourth Amendment) and state tort battery claims against Bowman and Giscombe, and a false arrest claim against Bowman.

A separate Order will be entered.

---

7. Defendants do not move for summary judgment with respect to Plaintiff's false arrest claim, but assert that, to the extent Plaintiff asserts such a cause of action, it is a common law, as opposed to a constitutional, claim. Plaintiff agrees that he alleges a common law claim of false arrest. Paper no. 14 at 12 ("Defendants appear to concede that the facts support Plaintiff's common law claim for false arrest."). Further, it is not clear whether Plaintiff contends that he was falsely arrested twice—on January 20, and, after Bowman alone obtained a warrant for his arrest, on

February 26. There are, however, insufficient facts alleged that the January 20 incident was an arrest as there is no indication that any officer took him into custody for purposes of prosecuting him for a crime that evening, *see Bouldin v. State*, 276 Md. 511, 516, 350 A.2d 130, 133 (1976) (defining arrest as "the detention of a suspected offender for the purpose of prosecuting him for a crime"), or that he was detained for investigation. Thus, the court assumes that Plaintiff intends to state a claim for false arrest against Bowman based on his February 26 arrest.