776 A.2d 4

**John E. WILLIAMS, Jr.**

v.

**HOFMANN BALANCING TECHNIQUES, LTD. et al.**

**No. 1214, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

July 5, 2001.

Leslie Hayes Russo (Paul D. Beckman, Israelson, Salsbury, Clements & Beckman, L.L.C., Baltimore, and Robert Wendt, Joel A. Pool and Holloran, Wendt & McMath, L.L.C., St. Louis, MO, on the brief), for appellant.

Michael A. Brown (Troy A. Priest and Brown, Diffenderffer & Kearney, L.L.P., on the brief), Baltimore, for appellees, Hofmann and Perfect Hofmann U.S.A.

George M. Church (Marisa A. Trasatti and Church & Houff, P.A., on the brief), Baltimore for appellee, Perfect Equipment Corp.

Argued before JAMES R. EYLER, KRAUSER, and ROBERT L. KARWACKI (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

This case presents the issue of whether an amended complaint, for purposes of the statute of limitations, relates back to the date of filing of the original complaint. The Circuit Court for Baltimore City held that it did not and entered summary judgment in favor of the defendants. We disagree, vacate the judgment, and hold that the amendment does relate back to the date of filing of the original complaint.

## Factual Background

We shall set forth only those background facts—procedural and otherwise—necessary to decide the issues presented. To assist in understanding a confusing scenario, we shall begin with a simplistic overview. Appellant, John Williams, Jr., was injured while using a tire changing machine. Appellant filed a complaint in the Circuit Court for Anne Arundel County against Lakeshore Exxon service station, the owner of the machine. The case was later settled and dismissed. One day before limitations ran, appellant filed a complaint in the Circuit Court for Baltimore City, in which he sued Hofmann Balancing Techniques and Perfect Hofmann U.S.A., appellees, as the alleged sellers of the machine. Subsequently, and well after the period of limitations had run, appellant amended to name Perfect Equipment Corporation, another appellee, as the seller of the machine. Appellant claims that the amendment was the correction of a misnomer. Appellees, Perfect Hofmann U.S.A. and Hofmann Balancing Techniques, Ltd., original defendants, and Perfect Equipment Corporation, the added defendant, claim that Perfect Equipment Corporation is a new party, and that the suit against it is barred by limitations.

In our recitation of the factual background, we will not include certain details that would be desirable for the sake of completeness, most notably, the order and timing of the proceedings below. The record extract was not helpful in that regard, and the docket entries were no better. We have included the substance of all material matters relied on by the parties. We have no reason to believe that the missing details are material.

On May 1, 1995, appellant was injured while using a tire mounting machine located at the Lakeshore Exxon service station in Anne Arundel County. On July 7, 1997, appellant, represented by Joseph A. Miklasz, Esquire,[1] filed a complaint in the Circuit Court for Anne Arundel County against Lakeshore Exxon, alleging negligence. In August, 1998, Lakeshore Exxon filed a third party complaint against Perfect Equipment Corporation, t/a Hofmann U.S.A., in which it alleged that the third party defendant was the manufacturer of the machine, and that the machine was defective. Lakeshore Exxon sought indemnification and/or contribution. Service was obtained on Perfect Equipment Corporation, apparently through its resident agent, located in Chattanooga, Tennessee.

On April 30, 1998, appellant filed a complaint in the Circuit Court for Baltimore City against Hofmann Balancing Techniques, Automotive Service Equipment (ASE), and Perfect Hofmann U.S.A. In that complaint, Perfect Hofmann U.S.A., described as a Tennessee corporation with an address of 1435 Heil Quaker Boulevard, La Vergne, Tennessee 37086, was alleged to be the seller, manufacturer, or distributor of the machine. On September 10, 1999, ASE filed a third party complaint against Perfect Equipment Corporation, t/a Hofmann U.S.A. and Lakeshore Exxon. On the same date, it filed a cross-claim against its two co-defendants. Perfect Equipment Corporation filed a fourth party complaint against Societa Italiano Construcioni Elattrameccaniche (SICE), an

---

1. Ordinarily, we do not refer to counsel by name in our opinions. In this case, it is necessary to do so, at least in some instances, to discuss the issue. For the sake of completeness, we will identify all counsel.

Italian corporation, in which it alleged that SICE was the manufacturer of the machine. Perfect Hofmann U.S.A. filed a third party complaint against Lakeshore Exxon and SICE. In March, 2000, ASE's unopposed motion to dismiss was granted, and by virtue of ASE's dismissal, Perfect Equipment Corporation, third party defendant, ceased to be a party. Appellant filed an amended complaint on March 8, 2000, in which he amended the causes of action and added "Ltd." after the name of Hofmann Balancing Techniques. The amended complaint was filed by new counsel, Joel A. Poole, Esquire, and Robert H. Wendt, Esquire, attorneys with Holloran, Wendt & McMath, L.L.C., St. Louis, Missouri, and Elizabeth M. Fischer, Esquire, local counsel.

On October 21, 1998, the Circuit Court for Anne Arundel County signed a stipulated order to transfer the case filed in Anne Arundel County to Baltimore City. This order was docketed on November 19, 1998. Accordingly, the case filed in Anne Arundel County was consolidated with the action originally filed in Baltimore City. On March 20, 2000, appellant dismissed the case originally filed in Anne Arundel County with prejudice, stating that it had been "settled." Appellant did not conduct any discovery in that case to identify or confirm the identity of the seller of the machine.

On April 24, 2000, Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A. filed a motion for summary judgment on the ground that appellant had misused the machine and assumed the risk of injury. The motion was supported in part by an affidavit of Robert Benson. On April 28, 2000, appellant's counsel took the deposition of Robert Benson, who appeared pursuant to appellant's notice to take the deposition of a corporate designee of Perfect Hofmann U.S.A. Mr. Benson testified that Perfect Hofmann did not come into existence until January 25, 1991 and that Perfect Equipment Corporation sold the machine, not Perfect Hofmann U.S.A. He also testified that Perfect Equipment Corporation had a division called "Perfect Hofmann" from 1988 to 1991, and it was that division that sold the machine.

On May 3, 2000, apparently as a result of the Benson deposition, Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A. amended the memorandum in support of their summary judgment motion and filed an amended affidavit by Robert Benson. The purpose was to correct prior statements implying that Perfect Hofmann U.S.A. had sold the machine to state that, instead, the machine had been sold by Perfect Equipment Corporation. The "statement of undisputed facts" in the original memorandum in support of the summary judgment motion contained the following: "The machine which was purchased by Perfect Hofmann from SICE was manufactured by S.I.C.E. in 1990. (Exhibit D, Affidavit of Robert Benson)." The statement in the amended memorandum provided: "The machine which was sold by Perfect Equipment Corp. to Automotive Service Equipment was manufactured by S.I.C.E. in 1990. (Exhibit D, Affidavit of Robert Benson)." The amended affidavit by Robert Benson, dated May 3, 2000, stated that the machine was manufactured by SICE in 1990 and was sold to ASE in November or December of 1990 by Perfect Equipment Corporation.

On May 8, 2000, appellant filed a motion for partial summary judgment, seeking a ruling, as a matter of law, that Perfect Hofmann U.S.A. had sold the machine. The motion was based on pleadings, discovery, and correspondence from counsel for defendants, Hofmann Balancing Techniques, Ltd., Perfect Hofmann U.S.A., and third party defendant, Perfect Equipment Corporation,[2] in which counsel and the parties admitted that Perfect Hofmann U.S.A. and/or Hofmann Balancing Techniques, Ltd. had sold the machine.

Appellant points to the following in support of his motion.[3] First, the "General Counsel of Berwind Industries, L.L.C., parent company of Perfect Equipment L.L.C." sent a letter dated September 18, 1998, to counsel for Lakeshore Exxon,

---

**2.** The same attorneys represented all three parties.

**3.** It is unclear whether appellant expressly relied on each of the items. They are in the extract, and appellees do not challenge their inclusion with one exception. *See* n. 4.

third party plaintiff. The author stated that he received the third party complaint against Perfect Equipment Corporation [presumably filed in the Anne Arundel County action] and that it contained several errors. In pertinent part, he stated, (1) "Perfect Equipment" was reorganized in 1997 as a Delaware limited liability company and was known as "Perfect Equipment Company L.L.C.," (2) "Perfect Equipment" never traded as "Hofmann U.S.A.," (3) "Perfect Equipment" never sold tire machines "at any time since 1990," (4) the manufacturer of the machine at issue was believed to be SICE, (5) from January 1990 through January 1991, "Perfect" and Hofmann Balancing Techniques, Ltd. were partners in a partnership known as Perfect Hofmann U.S.A., and (6) "Perfect Equipment" believes that, at all relevant times, Hofmann Balancing Techniques, Ltd. sold SICE tire machines in the United States. The author requested that the third party complaint be dismissed.

Second, Richard Hofmann filed an affidavit dated December 30, 1998. In it, Mr. Hofmann identified himself as corporate insurance manager of Berwind Corporation, the parent company of Perfect Equipment Company, L.L.C., successor to Perfect Equipment Corporation. Mr. Hofmann stated that the machine in question was sold in 1991 by Perfect Hofmann U.S.A. to a distributor that, in turn, sold it to Lakeshore Exxon. As near as we can tell, this affidavit was filed in connection with an unsuccessful effort by the defendants in the Baltimore City action to transfer the case to Anne Arundel County.

Third, on April 7, 2000, Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A. filed a joint motion for protective order with respect to discovery requests by appellant. The movants stated, in part, that they were resisting certain discovery because they had already admitted that Perfect Hofmann U.S.A. had sold the machine.

Fourth, Perfect Hofmann U.S.A., in its third party complaint against Lakeshore Exxon and SICE, admitted that it had sold the machine.

At this point in our recitation, we shall refer to two letters. We are not sure when they were produced or when they were filed in this case. Daniel R. Lanier, Esquire, and Virginia S. Hovermill, Esquire, attorneys with Miles & Stockbridge, P.C., entered their appearances on behalf of third party defendant Perfect Equipment Corporation in the Anne Arundel County case. By letter dated November 17, 1998,[4] directed to Mr. Miklasz, appellant's counsel, Mr. Lanier acknowledged receipt of a November 11, 1998 letter forwarding a copy of the complaint in the Baltimore City action. Mr. Lanier stated:

> When I indicated to you that I would accept service, I assumed that the named Defendant in the Baltimore City case was the same as the Defendant named in the Anne Arundel County case. I now realize that this is not entirely correct. The Anne Arundel County case names "Perfect Equipment Corporation t/a Hofmann U.S.A." The Baltimore City action names "Hofmann Balancing Techniques" and "Perfect Hofmann, U.S.A." I am in the process of confirming whether one or both of the entities named in the Baltimore City action are the same as "Perfect Equipment Corporation t/a Perfect Hofmann, U.S.A." I am attempting to obtain the name of the correct corporate entity. Once I have this information, I will pass it on to you. I am quite certain that, once the correct corporate entity is identified, I will have authority to accept service on its behalf.

By letter dated November 20, 1998, Mr. Lanier wrote to Mr. Miklasz and stated:

> I believe I now have a handle on the corporate history. My understanding is that, at the time the machine was sold in 1991, Perfect Equipment Corporation and Hofmann Balancing Techniques Ltd. were partners in a Partnership known as Perfect Hofmann, U.S.A. The Partnership was the entity that sold the machine at issue to a distributor which, in turn, sold it to Lakeshore Exxon. You have named Perfect Hofmann, U.S.A. and Hofmann Balancing Techniques Ltd.

---

4. There is a question whether this letter was part of the record below.

in the above case. I have only been asked to represent Perfect Hofmann, U.S.A. in connection with the above case. I have been authorized to accept service on its behalf. I cannot, however, accept service on behalf of Hofmann Balancing Techniques Ltd. insofar as I do not represent that company and it is a separate entity from Perfect Hofmann, U.S.A.

Mr. Lanier and Ms. Hovermill subsequently entered their appearance in the Baltimore City case on behalf of defendant, Perfect Hofmann U.S.A. and, ultimately, on behalf of defendant, Hofmann Balancing Techniques, Ltd., and third party defendant, Perfect Equipment Corporation. Still later in the proceedings, on or about November, 1999, new counsel, Michael A. Brown, Esquire, and Lisa A. Harvey, Esquire, attorneys with Brown, Diffenderffer & Kearney, L.L.P., successors to Mr. Lanier and Ms. Hovermill, entered their appearance for those same parties. On May 12, 2000, appellant filed a second amended complaint against Hofmann Balancing Techniques, Ltd. and Perfect Equipment Corporation, d/b/a Perfect Hofmann U.S.A. Appellant also filed a "memorandum of law in support of his Rule 2–341(c)(4) amendment to his first amended complaint, correcting a misnomer of a party."

On May 19, 2000, Perfect Equipment Corporation, as defendant, filed a motion to strike the second amended complaint. The motion was filed by new counsel, Winslow F. Bouscaren, an attorney with Church & Houff, P.A. The motion recited that it was being filed "[w]ithout submitting to the jurisdiction of this Court," pursuant to Rule 2–322, on the ground that Perfect Equipment Corporation, as defendant, had never been served with process and that the complaint was barred by limitations. With respect to limitations, it asserted that the amendment did not correct a misnomer but added a new party, and consequently, the amendment did not relate back to the date of filing of the original complaint. That same day, Perfect Hofmann U.S.A. and Hofmann Balancing Techniques, Ltd. also filed a motion to strike on the ground of limitations. On May 25, 2000, those same two defendants filed motions to dismiss on the ground that Perfect Hofmann U.S.A., a general

partnership, was not in existence at the time the machine was sold. They asserted that it came into existence on January 25, 1991, pursuant to a joint venture agreement between Hofmann Balancing Techniques, Ltd. and Perfect Equipment Corporation, and the only role of Hofmann Balancing Techniques, Ltd. was to serve as a partner in Perfect Hofmann U.S.A. In a supplemental memorandum, the two defendants asserted that the machine had been sold by Perfect Equipment Corporation to ASE on December 6, 1990, and that ASE had sold it to Lakeshore Exxon on September 10, 1991. Invoices reflecting those sales are in the record extract, but we have not been able to determine when they were first produced.

In support of the motions, appellees rely on the following.[5] First, in December, 1999, Perfect Equipment Corporation, as third party defendant in the Baltimore City action, filed answers to interrogatories directed to it by Lakeshore Exxon, third party plaintiff. In those answers, in pertinent part, Perfect Equipment Corporation stated that it sold the machine in question to ASE on December 6, 1990, and that ASE sold the machine to Lakeshore Exxon on September 10, 1991.

Second, Daniel R. Lanier filed an affidavit dated May 12, 2000. In that affidavit, Mr. Lanier stated that he formerly represented Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A., defendants, and Perfect Equipment Corporation, third party defendant. He further stated that, at the time he wrote the November 20, 1998 letter to appellant's counsel, he did not have a copy of the invoice showing that Perfect Equipment Corporation had sold the machine in question, and he did not have information indicating that ASE had sold the machine to Lakeshore Exxon in September, 1991. Mr. Lanier further stated that he believed that the machine had been sold by Perfect Hofmann U.S.A. to ASE after January, 1991, when Perfect Equipment Corporation and Hofmann Balancing Techniques, Ltd. formed the partnership

---

5. It is unclear whether appellees expressly relied on each of the following items below. They are in the extract, and appellant does not challenge their inclusion.

known as Perfect Hofmann U.S.A. In summary, Mr. Lanier stated that, at all times during his involvement, he believed that Perfect Hofmann U.S.A. had sold the machine at issue after January, 1991.

Third, Lisa A. Harvey, in a letter dated May 4, 2000, directed to appellant's counsel, stated:

> During his deposition last Friday, Bob Benson clarified an issue which apparently has been the subject of some misunderstanding. Namely, Mr. Benson testified that the machine which is the subject of this litigation was sold by Perfect Equipment Corp., not Perfect Hofmann U.S.A. As you know, Perfect Equipment Corp. is not a defendant in this lawsuit.

Ms. Harvey, in the letter, indicated that appellant was on notice, as early as August 26, 1998, that the machine had been sold by Perfect Equipment Corporation. The August 26, 1998 date was when Lakeshore Exxon filed its third party complaint against Perfect Equipment Corporation in the Anne Arundel County case. Ms. Harvey further indicated that appellant was again put on notice that Perfect Equipment Corporation had sold the machine when it filed a counterclaim against Lakeshore Exxon in May, 1999, in which Perfect Equipment Corporation alleged that it had purchased the subject machine from the manufacturer. This sentiment was reiterated in Perfect Hofmann U.S.A.'s third party claim against Lakeshore Exxon, also filed in May, 1999. Ms. Harvey referenced the fact that Perfect Equipment Corporation, in its answers to interrogatories filed in December, 1999, indicated that it had sold the machine. After referencing other pleadings and correspondence and characterizing the record as "confusing," Ms. Harvey concluded by stating that because Perfect Equipment Corporation, the seller, was not a defendant and the existing defendants had not sold the machine, she would likely file a summary judgment motion on behalf of Hofmann Balancing Techniques and Perfect Hofmann U.S.A.

Fourth, Ms. Harvey filed an affidavit dated May 16, 2000, in which she stated that on or about November 18, 1999, she had

entered her appearance on behalf of Hofmann Balancing Techniques, Ltd., Perfect Hofmann U.S.A., and Perfect Equipment Corporation. She further stated that she subsequently obtained information from Perfect Equipment Corporation in order to prepare answers to interrogatories. The answers were filed in December, 1999. Finally, she stated that it was "not until I heard the deposition testimony of Robert Benson that I realized that defendant Perfect Hofmann U.S.A. had not been formed at the time that the machine was sold by Perfect Equipment Corp. to Automotive Service Equipment and that plaintiff had sued the wrong party."

Fifth, Gearhard Rossteuscher filed an affidavit dated May 15, 2000, in which he stated that he had been the president of Hofmann Balancing Techniques, Ltd. since 1981. He further stated, in pertinent part, that (1) Hofmann Balancing Techniques, Ltd. did not sell the machine in question; (2) at the time the machine was sold, Hofmann Balancing Techniques, Ltd. "had nothing whatsoever to do with Perfect Equipment Corp. or with the sale of tire changing machines in the United States"; (3) on January 25, 1991, Perfect Equipment Corp. and Hofmann Balancing Techniques, Ltd. formed a general partnership known as Perfect Hofmann, U.S.A.; (4) Perfect Hofmann U.S.A. did not sell the machine "as it had not been formed as of the time of the sale in 1990"; and (5) that neither Hofmann Balancing Techniques, Ltd. nor Perfect Equipment Corp. had any ownership interest in the other.

Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A., in their opposition to the plaintiff's motion for partial summary judgment, attached an affidavit dated May 10, 2000, by Thomas K. Willingham, President of Perfect Equipment Company, L.L.C., f/k/a Perfect Equipment Corporation. The affiant stated that Perfect Equipment Corporation was formed in 1966, that it purchased the machine from SICE in Italy, and that it sold the machine to ASE in December, 1990. He further stated that Perfect Hofmann U.S.A., a general partnership, was formed on January 25, 1991.

By order dated May 19, 2000, the circuit court denied appellant's motion for partial summary judgment and granted

leave to file the second amended complaint.[6] By order dated
June 12, 2000, the circuit court granted the motions to strike
by Perfect Equipment Corporation, Perfect Hofmann U.S.A.,
and Hofmann Balancing Techniques, Ltd. and granted the
motions to dismiss by Hofmann Balancing Techniques, Ltd.
and Perfect Hofmann U.S.A.

With respect to the motions to strike, the circuit court, in
pertinent part, stated: "As I have found factually, this piece of
equipment was sold in 1990. This being a products liability
case, that becomes the operative date. I have also found
factually that Perfect Hofmann, U.S.A., did not come into
existence until 1991." The court concluded that "[s]uit cannot
be maintained against a nonentity." The court explained,
"even if the nonentity was trading under the name of a legally
established party, that party must be the one sued, not the
nonentity or the trade name. In 1990, it was apparently clear
that the operative date is December 6, 1990, Perfect Hofmann,
U.S.A., was not in existence...." The court relied on *Stein v.
Smith,* 358 Md. 670, 751 A.2d 504 (2000), and *McSwain v. Tri-
State Transp. Co.,* 301 Md. 363, 483 A.2d 43 (1984), for its
conclusion that, because Perfect Hofmann U.S.A. was not in
existence at the time of the sale, there was nothing to which
the amendment could relate back. As we shall discuss later,
we disagree with that reading of *Stein* and *McSwain.* With
respect to the motions to dismiss, the court found that neither
defendant had sold the machine. Appellant noted an appeal to
this Court. On appeal, Leslie Hayes Russo, an attorney with
Israelson, Salsbury, Clements & Bekman, L.L.C., has succeed-
ed Elizabeth M. Fischer as local counsel for appellant. Addi-
tional information will be referred to as we discuss the issues.

### Contentions

Appellant's initial contention is that the circuit court erred
in dismissing the case as to Perfect Hofmann U.S.A. and

---

6. The amendment was filed more than fifteen days prior to the sched-
uled trial date. Consequently, leave to amend was not required. *See*
Rule 2–341.

Hofmann Balancing Techniques, Ltd. because (a) Perfect Hofmann U.S.A. admitted in the course of the litigation that it was a viable entity at the time of sale and that it sold the machine, and (b) at the time the machine in question was sold, Perfect Equipment Corporation held itself out as Perfect Hofmann U.S.A. As a result, Perfect Hofmann U.S.A. was or should be held to be the seller.[7]

In support of (a), appellant points to the pleadings, Lanier letters, Hofmann affidavit, and other materials referenced earlier in this opinion and concludes that the admissions create a dispute of material fact requiring an evidentiary proceeding. In the alternative, appellant asserts that the admissions are binding judicial admissions and Perfect Hofmann U.S.A. and Hofmann Balancing Techniques, Ltd. are estopped from denying the earlier admissions.

In support of (b), in addition to what has already been mentioned, appellant relies on the following. On September 29, 1999, appellant, Lakeshore Exxon, Perfect Equipment Corporation t/a Hofmann U.S.A., Perfect Hofmann U.S.A., and ASE, through counsel, filed a joint motion for modification of a scheduling order and continuance of the then scheduled trial date.[8] The motion contained a footnote as follows:

Perfect Hofmann (One of the defendants in the Hofmann Balancing Action) [Baltimore City] and Perfect Equipment (the third party defendant in the Lakeshore Action) [Anne Arundel County] are for all intents and purposes the same entity for purposes of this litigation. According to their counsel, Perfect Equipment is a partner in the Perfect Hofmann enterprise. Hofmann Balancing Techniques, Inc., on the other hand, is a separate entity that has been served with the complaint, but has not yet filed an answer.

---

7. It is not clear how this argument applies to Hofmann Balancing Techniques, Ltd.

8. Hofmann Balancing Techniques had filed an answer prior to this time. It is unclear why it was not a party to the joint motion.

The joint venture agreement dated January 25, 1991, indicates that Perfect Equipment Corporation and, after its formation, Perfect Hofmann U.S.A., each had the same address, 1435 Heil Quaker Boulevard, La Vergne, Tennessee, 37086. An invoice dated in 1988 reflects the sale of a tire machine similar to the one at issue and contains the names "Perfect Equipment Corporation" and "Perfect Hofmann Corporation." Robert Benson testified in deposition that Perfect Equipment Corporation operated Perfect Hofmann as a division from 1988 until 1991.

Second, appellant contends that the circuit court erred in striking the second amended complaint because it only corrected the misnomer of a defendant. Appellant argues that it is obvious that he intended to sue the seller of the machine, and that there is evidence that Perfect Equipment Corporation had timely notice of its intended status as a defendant. Appellant further argues that the relevant issue is one of notice to Perfect Equipment Corporation, not service of process. Consequently, the fact that Perfect Equipment Corporation was not served with process as a defendant does not prevent the correction of a misnomer and consequent relation back. As a final argument in support of this contention, appellant states that his diligence is not the determining factor; rather, the determining factor is whether Perfect Equipment Corporation was prejudiced, and it was not.

Third, appellant contends that the circuit court erred in denying his motion for partial summary judgment. Appellant argues that, based on the matters discussed above, he was entitled to a ruling as a matter of law that Perfect Hofmann U.S.A. was the seller of the machine. This is the same argument made in response to the motions to dismiss by Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A. insofar as appellant argued that Perfect Hofmann U.S.A. was the seller as a matter of law.

Perfect Equipment Corporation has moved to dismiss the appeal on the ground that (a) this Court lacks jurisdiction and (b) we should exercise our discretion and dismiss the appeal

because of violations of the rules governing appellate practice. With respect to (a), Perfect Equipment Corporation argues that it has not been served with process and has not been served with copies of all pleadings and other papers, as required by Rule 2 341(d). Consequently, there is no *in personam* jurisdiction over it. Additionally, Perfect Equipment Corporation argues that appellant failed to identify Perfect Equipment Corporation on appellant's notice of appeal and, pursuant to Rule 8–205, failed to identify Perfect Equipment Corporation in his prehearing information reports. Perfect Equipment Corporation points out that, not only is it not mentioned by name in the notice of appeal or in the information reports filed by appellant, but counsel [9] for Perfect Equipment Corporation as a defendant, was not notified of the appeal until it received a letter from appellant's counsel dated February 5, 2001. The notice of appeal was filed in July, 2000.

With respect to (b), Perfect Equipment Corporation points to numerous procedural violations as follows. Appellant failed to serve Perfect Equipment Corporation with pleadings and other papers as required by Maryland Rule 1–321. The prehearing information reports filed pursuant to Rule 8–205 were substantively deficient and untimely. Appellant's brief and joint record extract were not served in accordance with the rules, and counsel for Perfect Equipment Corporation was not consulted with respect to the contents of the record extract. The record extract and index are inadequate and, in certain respects, inaccurate. Most notably, Perfect Equipment Corporation, in its brief, asserts that the letters from Mr. Lanier to appellant's counsel dated November 17, 1998, and November 20, 1998, were included in the record extract but were not a part of the record below. As a result of the asserted deficiencies, Perfect Equipment Corporation included, in an appendix to its brief, additional materials and a

---

9. Counsel referred to are George M. Church, Esquire and Marisa A. Trasatti, Esquire, attorneys with Church & Houff, P.A. Winslow F. Bouscaren left that firm in July, 2000, and joined Brown, Diffenderfer & Kearney, L.L.P. The representation of Perfect Equipment Corporation remained in Church & Houff, P.A.

revised index for the joint record extract. The revised index details the problems perceived in the extract. With respect to the letters from Mr. Lanier to appellant's counsel, the revised index indicates that the November 17, 1998 letter was not part of the record but does not contain the same assertion with respect to the November 20, 1998 letter. To interject our own comment at this point, we do not know if either or both of the letters were part of the record. It is not crucial, however, because the Lanier affidavit was included. We have had great difficulty, as should be obvious by now, in deciphering the record and the record extract.

With respect to its motion to strike the second amended complaint, Perfect Equipment Corporation contends (1) that the ruling was discretionary and is reviewable on an abuse of discretion standard, (2) that the amendment was not a misnomer, but rather, added a new party, and (3) that the amendment violates Rule 2–341(c) because Perfect Hofmann U.S.A. and Hofmann Balancing Techniques, Ltd. were properly dismissed, and therefore, no original defendant remains. Hofmann Balancing Techniques, Ltd. and Perfect Hofmann U.S.A. support the position taken by Perfect Equipment Corporation and also state that their dismissal was proper because they were not involved in the sale of the machine.

## Discussion

### *Motion to Dismiss Appeal*

We shall address the jurisdictional arguments first. Perfect Equipment Corporation appeared, pursuant to Rule 2–322(a), without submitting to the jurisdiction of the court, in order to contest appellant's amendment. Rule 2–341(d) provides that, if a new party is added by amendment, the amending party shall cause process, and a copy of pleadings and other papers to be served upon the new party. Perfect Equipment Corporation's argument that the appeal should be dismissed pursuant to Rule 2–341(d) evades the question. The question is whether the amendment relates back to the date of filing of the original complaint for purposes of limitations. If so,

appellant may proceed with service as necessary. In other words, it is premature to rely on Rule 2–341(d).

■■■ Appellant's notice of appeal stated that an appeal was being noted from the judgment entered against appellant "and in favor of defendants." The notice of appeal, however, does not require reference to each issue or order that is going to be the subject of an issue on appeal. *See B & K Rentals & Sales Co. v. Universal Leaf Tobacco Co.*, 319 Md. 127, 132–33, 571 A.2d 1213 (1990), *on remand at*, 84 Md.App. 103, 578 A.2d 274 (1990), *rev'd*, 324 Md. 147, 596 A.2d 640 (1991)(stating that "an appeal from a final judgment order brings up for appellate review all earlier orders in the case. . . . Maryland Rule 8–202 does not require that a notice of appeal specify the judgment or order appealed from."); *Washington Suburban Sanitary Comm. v. Riverdale Heights Volunteer Fire Co.*, 308 Md. 556, 560, 520 A.2d 1319 (1987)(stating that although "[a]ppellate jurisdiction requires a final judgment or an appealable interlocutory judgment, [ ] the Maryland Rules do not require that the judgment complained of be identified in the order for appeal."); *Green v. Brooks*, 125 Md.App. 349, 363, 725 A.2d 596 (1999)(positing that "[i]t is clear that the language used in appellant's notice of appeal does not determine what we may review."). In our view, the notice of appeal was sufficient to provide this Court with jurisdiction. Similarly, defects in the information reports do not deprive this Court of jurisdiction. Moreover, information in an information report is confidential and may not be referred to except at a prehearing or scheduling conference. Rule 8–205(e) provides:

> Information contained in an information report or a supplemental report shall not (1) be treated as admissions, (2) limit the disclosing party in presenting or arguing that party's case, or (3) be referred to except at a prehearing or scheduling conference.

■■■ With respect to the remaining assertions, we lament the deficiencies in procedure and, once again, remind the Bar that we may dismiss an appeal for violation of the rules of appellate procedure. *See* Rule 8–602. Nevertheless, under

the circumstances of this case, where the record is "confusing"· and all parties assert lack of diligence by other parties, we exercise our discretion and deny the motion to dismiss the appeal.

## Standard of Review

■ The parties agree that the circuit court considered matters outside of the pleadings, and that the motions to dismiss should be treated as motions for summary judgment. *See* Rule 2–322(c). With respect to the motions to strike, the court did not grant those motions on the ground that it was exercising its discretion to permit or not permit an amendment. *See Mattvidi Assocs. Ltd. Partnership v. NationsBank of Virginia, N.A.*, 100 Md.App. 71, 79–83, 639 A.2d 228 (1994). The court ruled that the amendment was, as a matter of law, barred by limitations. Therefore, the cases cited by the parties addressing the exercise of discretion in permitting amendments are not directly relevant to the issue before us. The amendment was accomplished; the question is the consequence of the amendment. As a result, the standard of review is tantamount to that of a motion for summary judgment.

## Appellant's Motion for Partial Summary Judgment

Appellant argues that, based on judicial admissions and the doctrine of estoppel, the circuit court erred in failing to rule, as a matter of law, that Perfect Hofmann U.S.A. sold the machine in question. We perceive no error in that ruling.

With respect to admissions, appellant relies on *Aetna Cas. & Sur. Co. v. Kuhl*, 296 Md. 446, 463 A.2d 822 (1983), and *Castiglione v. Johns Hopkins Hosp.*, 69 Md.App. 325, 517 A.2d 786 (1986). The *Aetna* case is inapposite. The Court of Appeals addressed the question of whether a statement by a witness was admissible into evidence as an admission, and thus, within that exception to the hearsay rule. It did not address admissions for summary judgment purposes. The *Castiglione* Court did discuss when admissions in pleadings are sufficient for summary judgment purposes, 69 Md.App. at

334–36, 517 A.2d 786, but it does not lead us to the conclusion urged by appellant.

At this point, we observe that it is unclear precisely what appellant contends was admitted for purposes of the issue before us. We interpret appellant's position to be that the admission was that Perfect Hofmann U.S.A. (the partnership) was the seller of the machine. Appellant does not, however, controvert the following facts: (1) Perfect Hofmann U.S.A., a general partnership, did not come into existence until January 25, 1991, (2) Perfect Equipment Corporation sold the machine in question on December 6, 1990 to ASE, and (3) ASE sold the machine to Lakeshore Exxon on September 10, 1991. Rather, appellant argues that, assuming the above statements are true, appellees are bound to the admission that Perfect Hofmann U.S.A. sold the machine.

If appellant contends that the admission was that Perfect Hofmann U.S.A. was a division of Perfect Equipment Corporation and that, as such a division, it was the seller, it is unavailing. The question is what entity responded to the name Perfect Hofmann U.S.A. Our reading of the record leads us to conclude that Perfect Hofmann U.S.A. responded as the partnership and admitted that it was the seller of the machine on the mistaken belief that the machine was sold in 1991. There is no competent evidence to the contrary.[10]

■ We decline to find a binding admission, in any event. When the new information was discovered, Perfect Hofmann U.S.A. "corrected" its prior statements, and the issue becomes one of estoppel.

With respect to estoppel, appellant relies on *Kramer v. Globe Brewing Co.*, 175 Md. 461, 2 A.2d 634 (1938). In *Kramer*, a personal injury action, the defendant stated in a pleading that the plaintiff was the defendant's employee, that the injuries arose out of the employment, and that the defen-

---

10. We reach this conclusion without consideration of the November 17, 1998 letter from Mr. Lanier to appellant's counsel, which may not have been part of the record below.

dant had complied with Worker's Compensation Laws. *Id.* at 464–65, 2 A.2d 634. In reliance on that statement, the plaintiff dismissed the action and filed a Worker's Compensation claim. *Id.* at 465, 2 A.2d 634. The Court held that the defendant was estopped to deny in the Worker's Compensation proceeding that the plaintiff was its employee. *Id.* at 471, 2 A.2d 634. The Court pointed out that facts stated in pleadings are conclusive until changed. *Id.* at 467, 2 A.2d 634 (citing *Jones on Evidence* (3rd Ed.) sec. 272). They may be conclusive in any event, and the extent to which a party is bound depends upon the facts of each case. *Id.* at 467, 2 A.2d 634. In circumstances such as those involved in *Kramer*, admissions may be binding, whether in point of fact they are true or false, on the ground that parties should not be able to play fast and loose with the court or other parties. *See Kramer*, 175 Md. at 468–69, 2 A.2d 634 (stating that in cases in which the doctrine of estoppel is invoked, "the test is not whether the admission is true, but whether it would be contrary to public policy and good morals to allow it to be disputed.")(quoting 1 *Greenleaf on Evidence* (16th Ed.) sec. 186, subsec. 3).

*Kramer* is inapplicable, however, and the doctrine of estoppel does not apply to this case. As previously observed, the statements were changed, and in addition, appellant was on notice that Perfect Equipment Corporation was the seller prior to the "correction." *See* the discussion in "Factual Background," *supra*, at 12–13. Additionally, the outcome of the relation back issue is not affected by the admissions. The Baltimore City action was filed one day prior to the running of limitations. The relation back issue currently before us, assuming all other facts remain unchanged, would be legally the same even if the amendment occurred earlier in point of time and without the admissions in question. Nothing appellees or their counsel did caused appellant to name the original defendants as it did or to not name Perfect Equipment Corporation.

### Relation Back

Preliminarily, we address appellees' arguments that the judgment should be affirmed because Perfect Equipment Cor-

poration has not been served with process and because Rule 2–341(c) and (d) have been violated. As noted above in our discussion of the motion to dismiss the appeal, Rule 2–341(d) requires that a new party, added by amendment, be served a summons and complaint, together with a copy of all pleadings and other court papers.

■ As previously indicated, the service of process rules are not dispositive of the issue before us. If the correct defendant was served, albeit incorrectly named, no service would be necessary. If the correct defendant, Perfect Equipment Corporation, is a new entity and never served because, as we have already stated, Perfect Hofmann U.S.A., the partnership, was served and answered, appellant may proceed with service if the amendment is determined to be the correction of a misnomer. If it is so determined, suit was commenced within the applicable period of limitations. Service is not required within that time period—only commencement of the suit. *See Nam v. Montgomery County*, 127 Md.App. 172, 732 A.2d 356 (1999)(stating that "service of process on the intended defendant is not essential to stop the running of limitations . . . .")(quoting *Smith v. Gehring*, 64 Md.App. 359, 365, 496 A.2d 317 (1985)); *Reed v. Sweeney*, 62 Md.App. 231, 488 A.2d 1016 (1985)(holding that the statute of limitations was satisfied because appellant filed the action and issued process within the three-year period and appellees received either actual or constructive notice shortly thereafter, even though appellees did not receive service of process within that three-year period).[11]

The same rationale applies with respect to Rule 2–341(c). Rule 2–341(c) provides, in pertinent part:

An amendment may seek to . . . (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long

---

11. An action may be subject to dismissal, however, for lack of prosecution. *See* Rule 2–507(b) (stating that "[a]n action against any defendant who has not been served . . . is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant").

as one of the original plaintiffs and one of the original defendants remain as parties to the action; (6) add a party or parties. . . .

Rather than being dispositive, this provision, in effect, states the question. The question is whether the issue before us is (1) misnomer, (2) correction of misjoinder or nonjoinder of a party, or (3) the addition of a party.

We now turn to that question. There is no evidence in the record, other than an inference that could arguably be drawn from admissions, that Perfect Hofmann U.S.A., a general partnership, was in existence prior to January 25, 1991. The record also includes admissions by appellees, later corrected, that Perfect Hofmann U.S.A. sold the machine, and testimony by Robert Benson, that "Perfect Hofmann," as a division of Perfect Equipment Corporation, sold the machine. As previously noted, appellant does not controvert the factual accuracy of the statement that Perfect Hofmann U.S.A. came into existence on January 25, 1991. Additionally, appellant does not controvert the factual accuracy of statements that the machine in question was manufactured by SICE, sold by Perfect Equipment Corporation to ASE on December 6, 1990, and sold by ASE to Lakeshore Exxon on September 10, 1991.

The record indicates that Perfect Equipment Corporation was served as a third party defendant in the Anne Arundel County action. Apparently, service was obtained over its resident agent. Mr. Lanier and Ms. Hovermill entered their appearance on behalf of Perfect Equipment Corporation. In the Baltimore City action, it appears that service was not obtained directly on Perfect Hofmann U.S.A., but rather, service was accepted on its behalf by Mr. Lanier and Ms. Hovermill. It is clear that appellant intended to sue the seller of the machine in the Baltimore City action when it named Hofmann Balancing Techniques and Perfect Hofmann U.S.A. as defendants. Perfect Equipment Corporation received imputed, if not actual, notice of appellant's intent through its attorneys, Mr. Lanier and Ms. Hovermill, when the complaint was served on them as agents for Perfect Hofmann U.S.A. because they agreed to accept service. Even though it was

served on them as agents for Perfect Hofmann U.S.A., it was also received by them while acting as counsel for Perfect Equipment Corporation and within the scope of that representation. A question arises whether Mr. Lanier and Ms. Hovermill accepted service on behalf of Perfect Hofmann U.S.A. as a general partnership or as a division of Perfect Equipment Corporation. As previously noted in our discussion of estoppel, the only reasonable inference that can be derived from the record is that it was the former. The mistake by appellees was as to the date of the sale and by whom—not as to the name of a party.

The circuit court, relying primarily on *Stein v. Smith*, 358 Md. 670, 751 A.2d 504 (2000), held that the amendment could not relate back because Perfect Hofmann U.S.A., the partnership, was not in existence at the time of the sale. In *Stein*, a corporation attempted to file a lawsuit after its charter had been forfeited. *Id.* at 672, 751 A.2d 504. A subsequent amendment to name the corporation's stockholder as a plaintiff was held not to relate back to the date of filing of the complaint. *Id.* at 671, 751 A.2d 504. The rationale for the holding was that the corporation lacked capacity to bring the suit, and therefore, there was nothing to which the amendment could relate back. *Id.* at 682, 751 A.2d 504.

Before discussing the *Stein* rationale, we mention two other cases which are similar in terms of the underlying issue. In *Burket v. Aldridge*, 241 Md. 423, 430–31, 216 A.2d 910 (1966), the Court of Appeals held that a suit against a deceased person was a nullity, and therefore, a subsequent amendment to name the estate did not relate back. In *Greentree v. Fertitta*, 338 Md. 621, 659 A.2d 1325 (1995), following an automobile accident, the plaintiff filed suit against the defendant six days before the expiration of the three-year statute of limitations. When service was attempted on the defendant, the plaintiff learned for the first time that the defendant had died more than a year before the suit was instituted. More than three years after the accident occurred, the plaintiff served the original complaint upon the personal representative of the estate, and later amended her complaint to change the

name of the defendant from " 'Neal Fertitta' to 'the Estate of Neal Fertitta, Dorrie Moon, personal representative.' " *Id.* at 624, 659 A.2d 1325. The Estate filed a motion to dismiss on the ground that it was untimely filed under Estates and Trusts (ET) § 8–103(a), which required that a suit filed against an estate be filed within nine months of the decedent's death. *Id.* The motion was granted by the circuit court. *Id.* On appeal, the estate contended that *Burket* was controlling and that, accordingly, the amendment substituting the estate for Fertitta did not relate back to the filing of the original complaint. *Id.* at 625–26, 659 A.2d 1325. The Court of Appeals rejected that argument, holding that ET § 8–104(e) [12] was controlling, and stating that "the effect of § 8–104(e) is to create an exception to the *Burket* principle under circumstances like those in this case, for claims against decedents' estates which are covered by insurance . . . . [s]ection 8–104(e) therefore makes timely [plaintiff's] action against Mr. Fertitta's estate." *Id.* at 626, 659 A.2d 1325. The exception to the *Burket* rule, as delineated in *Greentree,* is limited to circumstances which invoke ET § 8–104(e), and thus is irrelevant to the case at hand.

The *Stein* and *Burket* holdings are not dispositive in the instant case. At the time the suit in question was filed, Perfect Hofmann U.S.A., a general partnership, was an entity capable of being sued. The fact that Perfect Hofmann U.S.A. was not in existence at the time of the sale of the product and did not sell the product results in the absence of liability on its part. It does not change its capacity to be sued and the fact that it was sued.

■ On several occasions, the general rule with respect to relation back of an amendment of a party has been stated to be that if it corrects the name of an original party, it relates

---

12. ET § 8–104(e) provides that "[i]f the decedent was covered by a liability insurance policy which at the time the action is instituted provides coverage for the occurrence ... an action against the estate may be instituted after the expiration of the time designated in this section, but within the period of limitations generally applicable to such actions."

back; if a new party is added, it does not relate back. *See e.g., Nam,* 127 Md.App. at 186, 732 A.2d 356 (citing *Smith v. Gehring,* 64 Md.App. 359, 364, 496 A.2d 317 (1985)). While simply stated, the application of the rule is often difficult. Timely notice to an intended party of that party's intended status is critically important. *See Warfel v. Brady,* 95 Md. App. 1, 11, 619 A.2d 171 (1993) ("[w]hether an amendment of a misnomer should be permitted depends upon whether the correct person, however misnamed, was put on notice of the pending suit"). In *Nam,* we stated that service of process prior to expiration of the limitations period is not critical. 127 Md.App. at 186, 732 A.2d 356. The critical factors are (1) who was the appropriate defendant, and (2) whether that party had timely notice of its intended status as defendant. *Id.* In *Nam,* the plaintiff sued "John Doe" and later amended to name an individual. We held that the amendment did not relate back and explained that it was doubtful whether the plaintiffs intended "John Doe" to be the individual later named, but that, in any event, the individual had no notice of the suit until she was served 4–1/2 years later. *Id.* at 186–87, 732 A.2d 356. This was well beyond the period of limitations plus any reasonable time for service of process. Although, as previously explained, notice is not required through service of process. It so happens that, under the facts in *Nam,* service of process was the first notice.

It is also critically important whether the "correct" party would be unfairly prejudiced. In *Greentree,* 338 Md. at 625, 659 A.2d 1325, the Court of Appeals stated:

An amended complaint changing the name of a defendant in the action, filed after the statute of limitations has run, may either seek to substitute a new party for the defendant originally named, or may correct a misnomer of the original named defendant. The effect of an amended complaint ordinarily depends upon whether the "correct" defendant was intended to be sued originally and whether the "correct" defendant would be unfairly prejudiced by allowing the amendment to relate back to the time of the filing of the original complaint.

(citing *McSwain v. Tri–State Transp.*, 301 Md. 363, 369–71, 483 A.2d 43 (1984), and *Western Union Tel. Co. v. State*, 82 Md. 293, 306–07, 33 A. 763 (1896)). The cases of *Crowe v. Houseworth*, 272 Md. 481, 485, 325 A.2d 592 (1974), and *Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 706 A.2d 1060 (1998), are likewise informative. In *Crowe*, one of several joint tenants owning property sued the defendant, alleging trespass. The defense raised the point that all joint tenants had to join in the action. The joinder was permitted, and it related back to the filing of the complaint for purposes of limitations. 272 Md. at 489, 325 A.2d 592. The Court emphasized that there was no prejudice to the defendant. *Id.* at 485, 489, 325 A.2d 592. Similarly, in *Zappone*, a corporation was substituted for its shareholder as plaintiff, and the amendment was held to relate back. 349 Md. at 68–69, 706 A.2d 1060. The Court pointed out that the defendant had knowledge within the limitations period and was not unfairly prejudiced. *Id.* at 70–71, 706 A.2d 1060.

Cases such as *Abromatis v. Amos*, 127 Md. 394, 96 A. 554 (1916), relied on by appellant, are not controlling. In *Abromatis*, the correct party was summonsed, although incorrectly named. *Id.* at 396, 96 A. 554. An amendment after limitations ran was held to be a misnomer and to relate back. *Id.* 403–04, 96 A. 554. In our situation, the correct party, Perfect Equipment Corporation, was not served as a defendant. Perfect Hofmann U.S.A., a partnership, was served. Cases in which a plaintiff adds a new party after limitations has run, without timely notice of its intention to sue that party, are also not controlling. *See Talbott v. Gegenheimer*, 237 Md. 62, 205 A.2d 285 (1964). In *Talbott*, the plaintiff was involved in an automobile accident and sued the driver of the car in which she was riding as a passenger and Harold G. Gegenheimer, the alleged driver of the other car involved in the collision. After limitations had run, the plaintiff amended to name Mary E. Gegenheimer as the driver of the other car, and Harold G. Gegenheimer, as the owner of that car. In a short opinion with very little stated reasoning, the Court affirmed summary judgment in favor of Mary E. Gegenheimer on the ground

that the action was barred by limitations because it was not the correction of a misnomer. *Id.* at 63, 205 A.2d 285.

We will discuss three other cases that we find to be factually close to the situation before us. The first is *Western Union Tel. Co. v. State*, 82 Md. 293, 33 A. 763 (1896). In that case, an action was brought seeking damages as a result of the death of an individual allegedly caused by the defendants. In the complaint, the defendant was sued as the "Western Union Telegraph Company." *Id.* at 305, 33 A. 763. The summons was served on Richard Bloxham, "its manager." *Id.* Evidence indicated that there was a corporation named "The Western Union Telegraph Company," a corporation of the State of New York, and another corporation named "The Western Union Telegraph Company of Baltimore City," a corporation of the State of Maryland. *Id.* Richard Bloxham was the general manager of Western Union Telegraph Company's operations in Maryland and the president and manager of the Western Union Telegraph Company of Baltimore City. *Id.* The evidence also indicated that the correct defendant was "The Western Union Telegraph Company of Baltimore City" and that "The Western Union Telegraph Company" had nothing to do with any of the facts or events in the lawsuit. *Id.*

An amendment to name "The Western Union Telegraph Company of Baltimore City" as a defendant was permitted, and the Court held that the amendment related back for purposes of limitations. *Id.* at 307–08, 33 A. 763. The Court observed that the summons was served on a person who was an officer and a manager of both companies. *Id.* at 306, 33 A. 763. Consequently, "the service was sufficient to bring into court either one of the companies." *Id.* The Court further observed:

> The [complaint] disclosed that the negligence complained of, was in connection with a wire on Eastern avenue near Luzerne street, and Bloxham, who was manager of both companies, knew, or ought to have known, that the telegraph poles and wires in that locality were owned or controlled by the Maryland Company, and that the New York Company had none in that vicinity. He therefore must have

known that it was the Maryland Company that was intended to be sued....

*Id.* at 307, 33 A. 763.

The second case is *McSwain v. Tri–State Transp. Co.*, 301 Md. 363, 483 A.2d 43 (1984). In that case, the plaintiff, McSwain, was injured on November 3, 1975. He filed suit against Tri–State Trucking, Inc., a Delaware corporation, which had a resident agent named James C. Dew, located in Federalsburg, Maryland. The address given in the suit, however, was that for Tri–State Transportation Co., Inc., a New Jersey corporation, which had a resident agent named Clifford L. Moore, located in Baldwin, Maryland. The Court observed that there was no connection whatsoever between the two corporations. McSwain requested service on Dew, Tri–State Trucking's resident agent but actually served Moore, Tri–State Transportation's resident agent. The name of the defendant was not changed, and a judgment by default was entered against Tri–State Trucking. A motion by Tri–State Trucking to strike the judgment by default was granted. McSwain then filed an amended declaration, in which he named Tri–State Transportation as defendant, but service was requested and obtained against Dew, Tri–State Trucking's resident agent. Several months later, McSwain obtained service on Moore, Tri–State Transportation's resident agent. Tri–State Transportation took the position that it was a new party, that the amendment did not relate back, and the action was barred by limitations. The Court framed the issue as follows:

> McSwain's second and final issue on appeal concerns the question whether the designation of Trucking rather than Transportation in the original declaration was a misnomer or a misjoinder. The distinction is important for the reason that although ordinarily an action shall not abate by reason of either a misnomer or misjoinder of a party, "[w]hen an amendment is made to correct ... misjoinder, ... someone of the original defendants must remain as part[y] to the action." Md. Rule 320 b 1. Thus, if the designation of Trucking as the defendant was a misjoinder, an amendment

substituting Transportation would not lie; the amendment would be proper, however, were there a misnomer.

*Id.* at 369, 483 A.2d 43. The Court held that it was a misnomer and permitted relation back. *Id.* at 370–71, 483 A.2d 43. The Court stated that it was satisfied that failure to name Tri–State Transportation, Inc. in the original declaration was inadvertent and that the failure to correct it sooner than was done was carelessness. *Id.* at 370, 483 A.2d 43. The Court pointed to the fact that the correct defendant had timely notice with respect to plaintiff's intent to sue it, and that it had not suffered unfair prejudice. *Id.*

The third case is *Smith v. Gehring,* 64 Md.App. 359, 496 A.2d 317 (1985). In *Smith,* Gehring issued writs of execution on a judgment and named the guardian and next friend of Smith, a minor. After the statute of limitations ran, Gehring amended to name Smith. Smith contended that it was a misjoinder because the original writs did not name her, but rather, named her mother as guardian and next friend. She stated that because a minor must be sued in her own name, there was a nonjoinder or misjoinder which could not be corrected by amendment after limitations had run.

The *Smith* Court stated, "[t]he problem of new defendant versus mere misnomer resolves itself into a question of who was intended to be sued, and whether that party had timely knowledge of the action." *Id.* at 364, 496 A.2d 317. After reviewing *Abromatis, Western Union Tel. Co.,* and *McSwain,* the Court stated:

In each of these cases, the correct defendant—the one actually intended to be sued—was served with process before limitations had run. This fact, however, is not critical. The critical factors are (1) who, on the facts of the case, was the appropriate defendant, and (2) whether that party had notice of his, or her, or its, intended status as defendant within the limitations period. In each of the three cases we have discussed, the significance of service of process was that by that means notice to the intended defendant was made apparent. In *McSwain* the Court of

Appeals relied not only on service of process, but also on pre-suit notice to the intended defendant, Transportation. That service of process on the intended defendant is not essential to stop the running of limitations appears from our decision in *Reed v. Sweeney,* 62 Md.App. 231, 488 A.2d 1016 (1985).

*Id.* at 365, 496 A.2d 317. We held, in *Smith,* that it was clear that appellee intended to obtain writs of execution against Smith. *Id.* at 367, 496 A.2d 317. With respect to the issue of notice to Smith that she was the intended defendant, the circuit court found as a fact that "he was dealing with a case of misnomer...." *Id.* On appeal, we observed that the finding necessarily included an implicit finding that Smith had notice of her intended status as defendant. *Id.* The finding was one of fact subject to review under a clearly erroneous standard. *Id.* We held that the record contained sufficient evidence to support the circuit court's finding. *Id.*

 Based on those cases, we conclude that service of the complaint on Mr. Lanier and Ms. Hovermill constituted notice to Perfect Equipment Corporation of appellant's intention to sue it as seller of the machine. The complaint, and other evidence as well, all indicate appellant's intent. Notice to Perfect Equipment Corporation's attorneys constituted notice to it. *See Williams v. Skyline Dev. Corp.,* 265 Md. 130, 165, 288 A.2d 333 (1972)(stating that "[i]t is [ ] well settled in Maryland that ... notice to an attorney is notice to his client.")(citing *Miller v. Mitnick,* 163 Md. 113, 118, 161 A. 157 (1932)); *Chapman v. Kamara,* 118 Md.App. 418, 439, 702 A.2d 977 (1997)(stating that even if a party did not have knowledge of a lawsuit, "he is charged with the knowledge of his attorneys in this matter, and he is bound by their acts on his behalf.")(citing *Thomas v. Hopkins,* 209 Md. 321, 326–27, 121 A.2d 192 (1956)), *aff'd in part and rev'd in part on other grounds,* 356 Md. 426, 739 A.2d 387 (1999). Once suit was commenced within the period of limitations, notice to the party named by amendment, Perfect Equipment Corporation, was timely because it was achieved within the period of time permitted for service of process had it been originally named

as a defendant. *See* Rules 2–113 and 2–507(b).[13] Additionally, and very significantly, there was no showing of unfair prejudice by Perfect Equipment Corporation.

The parties rely on several cases decided by federal courts. Those cases have limited value because Federal Rule 15(c) contains an express relation back provision, while the Maryland rules do not. Rule 15(c) provides:

Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the

---

**13.** While notice was beyond the four-month period, as contained in Rule 2–507(b), and therefore arguably too late, Mr. Lanier, in November 1998, indicated a willingness to accept service on behalf of Perfect Equipment Corporation had it been named at that time. Consistent with that position, there is no contention now that *notice* in November, 1998 was not within the time period in which *service* could have been obtained had Perfect Equipment Corporation been originally named. If originally named, limitations would not have been a bar. *Compare Nam*, 127 Md.App. at 186–87, 732 A.2d 356 (holding that an amendment did not relate back because the individual later named as a defendant had no notice of the suit until she was served 4–1/2 years after the incident precipitating the lawsuit).

Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

In 1980, the Maryland Rules Committee considered an early draft of Rule 2–341, which included the substance of Federal Rule 15(c). *See* Court of Appeals Standing Comm. on Rules of Practice and Procedure, Minutes on Rule 2–341 (November 1980)[hereinafter Minutes, 1980]. Certain members of the committee expressed the concern that issues involving statutes of limitations were substantive rather than procedural. *See* Minutes, 1980 at 12–13. The relation back provision was subsequently deleted in the version of Rule 2–341 that was ultimately adopted by the Rules Committee. *See* Court of Appeals Standing Comm. on Rules of Practice and Procedure, Minutes on Rule 2–341 (January 1981)[hereinafter Minutes, 1981]. The reporter to the Rules Committee explained:

This deletion was made in response to the Committee's expressed concern that a provision which deals with statute of limitations issues is more substantive than procedural.

*See* Minutes, 1981 at 4.

In *Grand–Pierre v. Montgomery County,* 97 Md.App. 170, 172–74, 627 A.2d 550 (1993), this Court rejected a contention that the Maryland relation back rule must be interpreted according to precedents "under the modern Federal Rule of Civil Procedure." We noted that the Maryland rule, Rule 2–341, contains no relation back provision and stated:

Thus, contrary to Grand–Pierre's argument, the cases interpreting the "modern" federal rule as to "relation back" are of little assistance in interpreting the Maryland rule, which contains no express provision for "relation back." This is particularly so because in fact Md. rule 2–341 was adopted *more recently* than the federal "relation back" rule. Ac-

cordingly, the Maryland Rule is in fact more "modern" than the "modern" federal rule.

*Id.* at 174, 627 A.2d 550 (footnote omitted).

We do not suggest that the conclusion that we reach is in any way inconsistent with that which we would reach under Rule 15(c) if it were applicable. Indeed, the contrary is true. We recently observed that Maryland case law and Rule 15(c) are similar with respect to relation back when the issue is whether an amendment created a new cause of action. *See Walls v. Bank of Glen Burnie*, 135 Md.App. 229, 244, 762 A.2d 151 (2000). With respect to an amendment of a party, we note that Rule 15(c)(3) states that an amendment relates back if it *"changes the party* or the naming of the party against whom a claim is asserted" (emphasis added) if the test is otherwise met. Facially, that language appears to be broader than the short version of the rule as often stated in Maryland cases. *See, e.g., Nam*, 127 Md.App. at 186, 732 A.2d 356 (an amendment relates back in the case of misnomer, but not when a new party is added)(citing *Smith v. Gehring*, 64 Md.App. 359, 496 A.2d 317 (1985)). As we have seen, however, the crucial considerations are the "new" party's notice of its intended status and prejudice, if any. *See Western Union Tel. Co.*, 82 Md. at 307, 33 A. 763, *McSwain*, 301 Md. at 370, 483 A.2d 43, and *Smith*, 64 Md.App. at 365, 496 A.2d 317. We also note that the current version of Rule 15(c) provides for receipt of the requisite notice within the period provided for service of process. Our holding is consistent with that provision. It is not necessary for us to decide whether there is a substantive difference between 15(c) and Maryland case law, however. We reach our decision based on Maryland case law.

With respect to Perfect Hofmann U.S.A. and Hofmann Balancing Techniques, Ltd., there is no evidence, other than early admissions, that either party sold the machine. We have already held that the admissions were not binding as a matter of law. We need not decide if the admissions would be sufficient to create a genuine issue of material fact and prevent ruling as a matter of law because, as previously indicated, appellant does not controvert the crucial facts as-

serted by appellees. As a result, summary judgment in favor of those defendants is affirmed.

We again observe that there is no violation of Rule 2–341(c), that arguably might result from the ruling in the preceding paragraph, because we have held the amendment corrected a misnomer.

In the exercise of our discretion, we shall not award costs. Each party shall bear his/its own costs. Appellant's costs shall include those relating to the joint record extract.

**MOTION TO DISMISS APPEAL DENIED; JUDGMENT AFFIRMED IN PART AND VACATED IN PART; EACH PARTY TO BEAR HIS/ITS OWN COSTS. APPELLANT'S COSTS TO INCLUDE JOINT RECORD EXTRACT.**